## OHIO CASUALTY INS. CO. v. FARMERS BANK OF CLAY, KENTUCKY et al.

### No. 10852.

United States Court of Appeals
Sixth Circuit.
Dec. 12, 1949.

John P. Sandidge, Louisville, Ky. (Robert P. Hobson, John P. Sandidge, Woodward, Hobson & Fulton, Louisville, Ky., Woodward, Bartlett, Hobson, & McCar-

roll, Owensboro, Ky., on the brief), for appellant.

John B. Anderson, Owensboro, Ky., John L. Dorsey, Henderson, Ky. (E. B. Anderson, Owensboro, Ky., J. L. Dorsey, Pentecost & Dorsey, Henderson, Ky., W. Fred Hume, Providence, Ky., J. M. Rayburn, Dixon, Ky., on the brief), for appellees.

Before SIMONS, MARTIN and MILLER, Circuit Judges.

MARTIN, Circuit Judge.

The district court dismissed a declaratory judgment action, brought by the appellant insurer against the appellee bank and the individual appellees. The appellant had issued a bankers blanket bond policy to the Farmers Bank of Clay Kentucky, indemnifying the assured against loss sustained through the dishonest, fraudulent, or criminal actions of its employees, and sought an adjudication of whether the bank is liable to the surviving partner and the estate of the deceased partner in the Farmers Mill in consequence of the alleged dishonest acts of George E. Price, assistant cashier of the bank and agent of the mill. Mary C. Price was joined as a defendant, as administratrix of the estate of George E. Price and in her individual capacity.

From the complaint it appears that Eddie Shelton, deceased, and his brother, Ben Shelton, had prior to March, 1945, operated, as partners under the trade name "Farmers Mill," a grain elevator and mill located in Webster County, Kentucky. In March of 1945, Eddie Shelton died and Mayme Shelton was appointed administratrix of his estate. After Eddie Shelton's death, Ben Shelton continued to operate the mill until around March 1, 1947. The mill did its banking business with the appellee, Farmers Bank. George E. Price had been assistant cashier of the bank and also an agent for the mill; and, acting in the dual capacity, had handled many transactions between the mill and the bank. He died in May, 1947, and Mary C. Price was appointed administratrix of his estate.

On October 9, 1947, Ben Shelton, acting in his capacity as manager of the Farmers Mill, made a claim against the Farmers Bank for $10,127.95, alleging that amount to be due the mill in addition to the sum shown on the bank's books to the credit of the mill. The bank was insured by appellant, which had agreed to indemnify the bank against any loss sustained through the dishonest, fraudulent, or criminal acts of any of its employees. Appellant states in its complaint that the bank's position is that if it is liable to the mill, the insurer is liable to the bank; and that its own position is that the bank is not liable to the mill and, therefore, appellant is not liable to the bank. However, should it be wrong in these contentions, the insurance company avers that it should receive reimbursement from Mary C. Price, as administratrix of the estate of George E. Price, for any loss accruing to it by reason of the bank's liability to the mill in consequence of the dishonest, fraudulent, or criminal acts of George E. Price.

The first amendment to the complaint added that George E. Price was among the employees whose dishonest, fraudulent, or criminal acts were insured against; that the bank, Ben Shelton, and Mayme Shelton, individually and as administratrix of the estate of Eddie Shelton, have made a claim against the insurance company based on Assistant Cashier Price's alleged fraudulent, dishonest and criminal acts in relation to the mill account, which acts caused a shortage in the account and a resulting loss to the claimants of more than $10,000; and that the insurance company denies and controverts this claim.

The complaint sought declaratory judgment as to (1) whether the bank is liable to the mill and, if so, in what amount: (2) whether appellant is liable to the bank for the whole or any part of the amount found to be due by the bank to the mill; and (3) whether George E. Price "was responsible for the loss sustained by the Bank in the Mill account and the loss sustained by this plaintiff through the dishonest, fraudulent, or criminal act or acts of George E. Price, and if so, the amount of such loss so sustained, and if it be adjudged that this plaintiff is liable to the Bank for any loss so caused by George E. Price, that such amount be ascertained and

this plaintiff be given judgment against Mary C. Price, Administratrix of the Estate of George E. Price, and for all proper relief."

The bank and the Sheltons moved to dismiss appellant's original complaint on the ground that the complaint failed to state a claim on which relief could be granted. The motion was sustained; whereupon the court allowed appellant an extension of thirty days in which to file an amended complaint. Appellant failed to tender its first amended complaint until more than a month after expiration of the time fixed by the court, but tender was made before any responsive pleading was filed by any of the defendants. The Sheltons again moved to dismiss. Mary C. Price, individually and as administratrix, made a similar motion on the grounds, first, that no controversy was shown to exist between the Ohio Casualty Company and herself in either capacity; and, second, that sections 396.010 and 396.020 of the Kentucky Revised Statutes provide that no action shall be brought or recovery had against a decedent's estate until a demand, accompanied by verified proof, has been made upon the personal representative, and that no such demand has been made in this case.

The plaintiff tendered a second amendment to its complaint; but both amendments were rejected upon the grounds that no facts were stated therein sufficient to entitle plaintiff to declaratory judgment and that they were not tendered in time.

The original complaint was filed under Title 28 U.S.C.A. § 400, United States Code. This section was superceded by sections 2201 and 2202, which became effective September 1, 1948. For the purposes of this case, the import of the new sections is identical with that of the old.

The district court held that the first amendment to the complaint could not be allowed because it was not filed within the extended time of thirty days allowed by its order; and, of course, that the second amendment was likewise not timely. In its first opinion, the court declared that "the complaint does not set forth that there is any controversy between any plaintiff and any defendant." In its order and judgment, it was recited that, the conclusion having been reached that "the plaintiff has not stated facts sufficient in law in its petition or its amended petition tendered herein to entitle it to a judgment for a declaration of rights or legal relations as petitioned for in this case, it is now ordered and adjudged that plaintiff's motion to file the amended complaint so tendered is overruled. * * *" The petition was dismissed.

Inasmuch as no responsive pleading had been filed at the time appellant tendered its first amendment to the complaint, the asserted untimeliness of the amendment was no valid ground for rejecting it. It is provided in Rule 15(a) of the Federal Rules of Civil Procedure, 28 U.S.C.A., for the United States District Courts that a party may amend his pleading once as a matter of course at any time before a responsive pleading is served. A second amendment is allowable under the rule only by leave of court or by written consent of the adverse party, but such leave "shall be freely given when justice so requires." In the circumstances of this case, it rested within the sound discretion of the district court to reject as too late the second, but not the first, amendment.

In Rogers v. Girard Trust Co., 6 Cir., 159 F.2d 239, this Court held that where the defendant had filed no responsive pleading to a complaint, the plaintiff was entitled to amend as a matter of course and, though leave of court was not necessary, it was error to deny the leave when requested. Cf. Magic Foam Sales Corporation v. Mystic Foam Corporation, 6 Cir., 167 F.2d 88, 91. These cases are also authoritative to the effect that a motion for summary judgment where the facts are in dispute, or *a motion to dismiss,* are not to be regarded as responsive pleadings within the intent of Rule 15(a). We think, therefore, that the first amendment to the complaint was properly before the district court and, so, is before us also in considering the issues presented by this appeal. The facts averred in the first amendment to the complaint must be taken as true in passing upon the district court's action in dismissing the complaint.

■ The appellees contend that there is no real controversy between the appellant insurer and the mill, either as to the insurer's liability to satisfy any shortage up to the policy limit established in the account of the mill with the bank, or as to the duty of the insurer to defend actions brought to impose "any claimed shortage up to $40,000 in that account." They state further that appellant and the bank, "their interests being identical", were "guilty of collusion, and fraud upon the district court" in the bringing of this action. There is absolutely no justification in the record for any charge of collusion between appellant and the bank. Indeed, the district judge made no suggestion whatever of collusion, but based his decision upon the proposition that there is no controversy existing between appellant and any of the defendants. The amended complaint, as has been heretofore shown, states that the bank and the other named defendants have made a claim against appellant, based upon the alleged breach of appellant's bond in that the assistant cashier of the bank, Price, was guilty of fraudulent, dishonest and criminal acts which caused a loss to the bank and the mill owners of more than $10,000.

The amended complaint asserts that these claims of the bank and the Sheltons are controverted and denied by appellant, and that there is an actual controversy between the appellant and the appellees concerning "the things and matters herein referred to and sued about". The further allegation is made that the claims of the bank and the Sheltons "are without merit or foundation in fact or in truth" and that appellant is not liable to them, but that "it is necessary to have the rights of all the parties hereto declared and adjudicated and determined."

Decision turns upon whether the original and first amended complaints, considered together, reveal the existence of an actual controversy between appellant on the one hand and appellees on the other. In our judgment, the facts alleged present an actual justiciable controversy, from which it follows that the district court erred in dismissing the cause of action.

In Maryland Casualty Co. v. Pacific Coal & Oil Co., 312 U.S. 270, 61 S.Ct. 510, 512, 85 L.Ed. 826, the Supreme Court, in reversing this court of appeals, held that an actual controversy existed between an insurer and the plaintiff in a personal injury action brought against its insured in the state court. The opinion of the Supreme Court declared that the difference between an abstract question and a "controversy" contemplated by the Declaratory Judgment Act is necessarily one of degree, it being difficult to fashion a precise test. It was declared that "the question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment."

In an earlier case, the Supreme Court reversed the decision of the Eighth Circuit Court of Appeals, Aetna Life Ins. Co. v. Haworth, 84 F.2d 695, dismissing a declaratory judgment suit upon the ground that there was no justiciable controversy. Aetna Life Insurance Co. v. Haworth, 300 U.S. 227, 57 S.Ct. 461, 81 L.Ed. 617, 108 A.L.R. 1000. Chief Justice Hughes wrote an elucidating opinion upon the subject, wherein he said, 300 U.S. at page 241, 57 S.Ct. at page 464: "Where there is such a concrete case admitting of an immediate and definitive determination of the legal rights of the parties in an adversary proceeding upon the facts alleged, the judicial function may be appropriately exercised although the adjudication of the rights of the litigants may not require the award of process or the payment of damages."

This court reversed and remanded for trial a judgment entered in the Eastern District of Kentucky, dismissing a declaratory judgment suit brought by an insurer against its assured and persons who had brought actions against them in the state court arising out of an automobile accident. The petition prayed for judgment declaring that the insurer was not liable under the terms of a policy for damages to the injured persons. The opinion pointed out

that the question of appellant's liability, under its policy, could be fully and completely decided upon the issue presented by its bill and thereby a multiplicity of suits or defenses could be avoided. The observation was made that the power to grant declaratory relief in an appropriate case having been conferred upon federal courts by Congress, such relief is not lightly to be denied. Maryland Casualty Co. v. Faulkner, 6 Cir., 126 F.2d 175, 178.

Appellees stress the opinion of the Fourth Circuit Court of Appeals in State Farm Mut. Automobile Ins. Co. v. Hugee, 115 F.2d 298, 132 A.L.R. 188, which affirmed an order dismissing a declaratory judgment suit brought by an insurer. We consider that case quite differentiable upon its facts from the instant controversy, and think that we should draw attention to the fact that the same court of appeals, in its later opinion (April 2, 1949), reversed the dismissal of a declaratory judgment suit brought by an insurer, where the facts bear closer resemblance to those encountered here than did those in the earlier case, though neither of the cases bears close analogy to that at bar. American Casualty Co. of Reading, Pa. v. Howard, 4 Cir., 173 F.2d 924, 928. It is significant that in this later opinion of the Fourth Circuit Court of Appeals Maryland Casualty Co. v. Faulkner, supra, is cited; and the following pertinent paragraph from Borchard on Declaratory Judgments, 107, was quoted: "The two principal criteria guiding the policy in favor of rendering declaratory judgments are (1) when the judgment will serve a useful purpose in clarifying and settling the legal relations in issue, and (2) when it will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding."

United States Fidelity & Guaranty Co. v. Pierson, 8 Cir., 97 F.2d 560, 562, 563, lends strong support to the conclusion which we have reached. There, it was held that an actual controversy of a justiciable character was presented between an insurer and one claiming damages from the insured because of personal injuries to the claimant's wife, where the policy of insurance indemnified the assured against liability for injuries, required the insurer to defend any action brought against the insured, and provided that there could be no recovery against the insurer until the amount of loss had been determined by final judgment. Judge Gardner said: "The rights and duties defined by this policy are so closely interwoven in both the obligation and the right to defend and the agreement to pay the finally determined liability that they should be considered as a whole, establishing a relationship which from the inception of a possible liability entitled assured to demand and the insurer to deny that the principal part of the insurance, the agreement to indemnify against liability, applies to this case, and hence, entitles plaintiff to prosecute the suit under the Declaratory Judgment Act. The dominant purpose of the contract as a whole must be borne in mind, and any attempt to divide it into distinct, separate parts is to obscure and subvert the intention of the contract and defeat the natural and reasonable expectation of the parties."

In the amended complaint in the case before us, it is averred that both the insured bank and the other appellees claim that the insurer is liable for the loss occasioned by the alleged fraudulent conduct of the bank's employee. Such claims are expressly controverted and denied by the appellant insurer. This makes an actual controversy between the non-resident insurer on the one side and the Kentucky citizens on the other and, therefore, establishes jurisdiction in a diversity of citizenship case between parties to an actual controversy.

The insurer is entitled under the Declaratory Judgment Act to be afforded an opportunity of defending against the claims of the bank and the other appellees in a declaratory judgment suit, in which all parties in interest are brought in and full opportunity is given for the trial of any and all controlling fact issues. This we conceive to be in consonance with the fundamental purpose of the Declaratory Judgment Act and in line with the pertinent authorities. Among other cases wherein the judgments of district courts dismissing declaratory judgment actions brought by insurers were reversed on appeal, see: Em-

ployers' Liability Assur. Corporation v. Ryan, 6 Cir., 109 F.2d 690, 691; Maryland Casualty Co. v. Consumers Finance Service, 3 Cir., 101 F.2d 514; Maryland Casualty Co. v. United Corporation of Massachusetts, 1 Cir., 111 F.2d 443; Central Surety & Ins. Corporation v. Caswell, 5 Cir., 91 F.2d 607; Commercial Standard Ins. Co. v. Gilmore, Gardner & Kirk Oil Co., 10 Cir., 157 F.2d 929; Franklin Life Ins. Co. v. Johnson, 10 Cir., 157 F.2d 653.

An opinion of the Court of Appeals for the Tenth Circuit which presents an entirely different factual situation from that found here, but has some import as illustrative of the principles which have guided us, is Till v. Hartford Accident & Indemnity Co., 124 F.2d 405.

■■■ One remaining question should be discussed, and that is the contention that the appellant cannot maintain this action against Mrs. Mary C. Price, as Administratrix of George E. Price, without having filed a demand for payment and verified proof showing the nature and amount of the claim, pursuant to Kentucky Revised Statutes 396.010 and 396.020. The requirements of these Kentucky statutes must be reasonably construed. In the factual setting of the present controversy, we think that, under the Kentucky decisions, the statutes have no applicability.

George E. Price was assistant cashier of the bank and also agent of the mill and, as such officer and agent, handled numerous transactions between the bank and the mill. In Fox &c. v. Apperson's executor, 69 Ky. 653, 655, a suit had been brought for a discovery and settlement against the personal representative of a decedent who, as agent, had sold land for the plaintiff for which no accounting had been made. The Court of Appeals of Kentucky said: "When the amount of the claim against a deceased debtor can be known and verified, then, to save the expense of litigation and to secure his representative by an accredited voucher, the statute prescribes the affidavits and demand; but to carry the requisition further would unreasonably pervert the statute, and obstruct remedy to the frus-

tration of justice. The object of the statute was to facilitate justice; and, properly construed according to its aim, it requires nothing unreasonable or impracticable— certainly no such absurdity as a specific demand, when the claimant cannot know what to demand, and when, as in such a case as this, it would be always unavailing to the claimant, and unsafe to the personal representative." Boreing, &c. v. Faris &c., 127 Ky. 67, 73, 104 S.W. 1022, 1023, was a case in which successor trustees brought suit against the executors of a former trustee to obtain a settlement of the decedent's accounts as trustee. The Kentucky Court of Appeals held that no affidavit and demand were necessary before the bringing of the action for the reasons that "the present trustees have no personal knowledge of the matters, as they had no connection with the estate until their appointment * * *"; and that from "the nature of the case there could be no demand accompanied with affidavit pursuant to the statute before the action is brought and a settlement made * * *."

In the instant case, it is apparent that appellant has no knowledge of the amount of defalcation, if any, of Assistant Cashier Price; and it would have been impossible for appellant to make a demand accompanied by affidavit before instituting this declaratory judgment suit.

The amended petition of appellant makes it plain that George E. Price was acting as a fiduciary of both the bank and the mill. The purpose of appellant in making his administratrix a party to the declaratory judgment suit apparently was to determine whether he was unfaithful in his trust in such manner and to such extent as to impose liability under its bond and, if liability should be imposed, to give the insurer the opportunity of proceeding against Price's estate for reimbursement. The provisions of the Kentucky statutes as construed by the Court of Appeals of that state constitute no bar to the bringing of this declaratory judgment action.

The judgment of the district court is reversed and the cause is remanded for trial.