Mrs. Rhoda L. FAYETTE

v.

**VOLKSWAGEN OF AMERICA, INC.,**
Volkswagenwerk Aktiengesellschaft,
and Jimmy Payne Motors, Inc.

Leon V. FAYETTE

v.

**VOLKSWAGEN OF AMERICA, INC.,**
Volkswagenwerk Aktiengesellschaft,
and Jimmy Payne Motors, Inc.

Civ. Nos. C 65–225, 66–82.

United States District Court
W. D. Tennessee, W. D.
Aug. 18, 1967.

Jake Green, Caruthers Ewing, Memphis, Tenn., for plaintiffs.

Cooper Turner, Jr., Canada, Russell & Turner, Memphis, Tenn., for Volkswagen of America, Inc. and Volkswagenwerk Aktiengesellschaft.

John S. Porter, Burch, Porter & Johnson, Memphis, Tenn., for Jimmy Payne Motors, Inc.

## MEMORANDUM DECISION

BAILEY BROWN, District Judge.

These causes came on for hearing on August 4, 1967 on motions of plaintiffs to rescind and vacate our decisions and orders of June 10 and July 6, 1966 granting the motion to quash service of process and to dismiss filed by defendant Volkswagen of America, Inc. (VOA) and granting such motion filed by Volkswagenwerk Aktiengesellschaft (VWAG) with respect to some theories of plaintiffs' claim. It is because of the particular provisions of the new Tennessee "long arm" statute that we could and did, with respect to VWAG, quash service as to some theories of claim and not quash as to another theory of claim. We also at the same time heard the motion of VWAG for summary judgment, which goes to the merits of the remaining claim against it, and the motion of VWAG to strike parts of the amended complaints. All of these motions were heard upon argument of counsel and upon the entire and now augmented record.

Defendants concede that the Court has jurisdiction to grant the relief sought by plaintiffs, that is, that the rulings of June 10 and July 6, 1966 are within our control and may be vacated. Rule 54(b).

■ It is clearly the law, without the necessity of citing authority, that jurisdiction is not presumed and, when challenged, must be shown.

VWAG is a West German corporation which in Germany manufactures Volkswagen automobiles. VOA, a wholly owned subsidiary of VWAG, is a New Jersey corporation with principal place of business at Englewood Cliffs, N. J., which under a franchise contract, purchases Volkswagen automobiles and parts from VWAG for resale to regional distributors (wholesalers) throughout the United States. The regional distributors sell the automobiles and parts to local dealers, which sell to ultimate consumers. The

regional distributor for the Memphis area is International Auto Sales and Services, Inc. at New Orleans (International). Neither VWAG nor VOA has any stock interest in or common directors or officers with International. VICO, an Arkansas corporation, is an insurance company which sells liability and other automobile insurance through Volkswagen dealers, but neither VWAG nor VOA own any stock in VICO, though VOA and VICO have some common directors and VOA has the right to exercise some control over VICO's overall business policies. VICO is qualified to and does do business in Tennessee. Volkswagen dealers are selected by International in its region with approval of VOA; VOA has the obligation to VWAG to perform some supervisory services with respect to dealers and on occasion VOA employees have come into Tennessee on VOA business, though it is not shown when and to what extent. VOA also has contracted for and obtained substantial advertising through national magazines and television and radio networks, which are distributed, seen or heard in Tennessee. Warranty claims are satisfied by dealers, which bill the regional distributor, which bills VOA, which, though not affirmatively shown, apparently bills VWAG, since warranties are the latter's ultimate responsibility. VWAG places a service booklet, which contains a warranty binding only VWAG, with each automobile when shipped from Germany, and the booklet is delivered with the automobile to the purchaser by the local dealer. From April, 1964 to March, 1965 (suit was filed on August 12, 1965) 5,340 new Volkswagens were registered in Tennessee and parts of retail value of $100,000 to $200,000 were sold in Tennessee. The automobile in question was purchased and imported by VOA, sold to International, and then sold to a Memphis dealer, Jimmy Payne Motors, Inc., now a co-defendant, which sold to plaintiffs. The warranty was delivered to plaintiffs with the automobile.

Plaintiffs, Mr. and Mrs. Fayette, make claim for damages for personal injuries

326

to Mrs. Fayette alleged to have resulted from a dangerous defect in the seat of their Volkswagen which was sold by VWAG to VOA and by VOA to International.

The defense asserted in these diversity actions that this court has not acquired in personam jurisdiction makes necessary two inquiries. The first is whether service of process is authorized by state law. Velandra v. Regie Nationale Des Usines Renault et al., 336 F.2d 292, 294 (6th Cir. 1964); Smartt v. Coca-Cola Bottling Corp., 318 F.2d 447 (6th Cir. 1963). If this question is answered affirmatively, then it must be determined whether the invocation of in personam jurisdiction is consistent with the due process clause of the Fourteenth Amendment.

It would be well, however, at the outset to outline briefly what due process at the present time requires. In International Shoe Co. v. State of Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945), it was held that "due process requires only that in order to subject a defendant to a judgment in personam, if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" With this decision, the traditional test of "doing business" within the state was no longer the sole standard for determining whether a foreign corporation, which was not otherwise amenable to the jurisdiction of the state, was subject to the invocation of in personam jurisdiction. In McGee v. International Life Insurance Co., 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957), where the cause of action against the defendant foreign corporation arose out of a transaction occurring within the state, this single transaction was held to be a sufficient predicate for in personam jurisdiction. See also: Elkhart Engineering Corp. v. Dornier Werke, 343 F.2d 861 (5th Cir. 1965); Gkiafis v. Steamship Yiosonas, 342 F.2d 546 (4th Cir. 1965); Eck v. United Arab Airlines, Inc., 360 F.2d 804 (2nd Cir. 1966); Buckley v. New York Post Corp., 373 F.2d 175 (2nd Cir. 1967); 2 Moore, Sec. 4.41–1[1]. On the other hand, where the cause of action arises outside the state, more contact, quantitatively or qualitatively, by a defendant foreign corporation must be shown to satisfy due process. Hanson v. Denckla, 357 U.S. 235 (1958), 78 S.Ct. 1228, 2 L.Ed.2d 1283; Velandra, supra, 336 F.2d 292 (6th Cir. 1964).

Plaintiffs first rely on T.C.A. § 48–923 [1] which provides that when a foreign corporation does "do business" in Tennessee and does not appoint an agent for service of process, service may be had through the Secretary of the State in any civil action "arising out of such unauthorized business done in this state * * *." Since this statute is limited in application to causes of action arising within this state, it could, consistent with due process, be invoked in any situation to which it is applicable even though the foreign corporation did not have such contacts with Tennessee that would allow suit for a cause of action arising outside Tennessee. However, the cases which deal with T.C.A. § 48–923 construe this provision to require that the foreign corporation have such "minimum contacts" with Tennessee as would allow maintenance of a cause of action which arose outside of Tennessee. Smartt v. Coca-Cola Bottling Corp., 318 F.2d 447 (6th Cir. 1963), on further appeal by intervening plaintiffs 337 F.2d 950 (6th Cir. 1964); Shuler v. Wood, 198 F.Supp. 801 (E.D.Tenn.1961); Trussell v. Bear Manufacturing Co., 215 F. Supp. 802 (E.D.Tenn.1963).

Plaintiffs also rely, in support of service of process here, on T.C.A. § 20–235 et seq., the new "long arm" statute, enacted in 1965. This statute provides that, with respect to claims for relief arising from specifically described

1. It now appears from the record that plaintiffs paid the proper fee for service under this provision and that plaintiffs intended to and did have service under this provision as well as under T.C.A. § 20–235.

transactions or occurrences taking place within Tennessee, service may be had through the Secretary of State. When applicable, as has been seen, this statute is consistent with present due process standards. (This was so held by a Chancery Court in Tennessee, but the appeal of this ruling was dismissed as premature. Arthur H. DuGrenier, Inc. v. Stone, Tenn., 415 S.W.2d 883 (decided May 22, 1967).)

At this point it would be well to set out plaintiffs' theories. In determining what theories of claim plaintiffs have pleaded against VWAG and VOA, we must give the amended complaints every intendment. Moreover, as will be seen later in this opinion, we should not at this stage, when we are testing jurisdiction, determine whether on the merits plaintiffs can maintain such theories of claim. The first theory is in tort for negligent manufacture by VWAG. The remaining theories are various species of strict liability. The second, against VWAG and VOA, is in tort for innocent misrepresentation (see: Ford Motor Co. v. Lonon, Tenn., 398 S.W.2d 240 (1966) and Restatement of Torts (2nd) § 402 B). The third, in tort, against VWAG and VOA, is that they sold an automobile in defective condition that was unreasonably dangerous (see: Lonon case, supra; Olney v. Beaman Bottling Co., Tenn., 418 S.W.2d 430, decided June 26, 1967; Restatement, supra, § 402 A). The fourth is breach of warranty of merchantability or fitness, with privity, against VWAG, the privity allegedly supplied by the written parts warranty binding VWAG. The fifth, against VWAG and VOA, is such breach of warranty without privity (see: Lonon, supra, at pp. 247-8; but see: Olney, supra at p. 431). The fourth and fifth theories, as will be seen, are hybrid tort—breach of contract theories.

■ With respect to T.C.A. § 48-923, it has already been pointed out that this provision has been construed to require that such "minimum contacts" be shown as would be the basis for maintaining a suit on a cause of action arising outside the state. In the *Velandra* case, supra, 336 F.2d 292 (6th Cir. 1964), a diversity action was brought in Michigan against the French corporation that manufactures Renault automobiles on a cause of action that arose in Ohio. The contacts of this French corporation with Michigan were substantially the same as the contacts of VWAG with Tennessee. The court held that the French corporation did not have such "minimum contacts" with Michigan as would satisfy the due process. We therefore conclude that service of process could not be had on VWAG under T.C.A. § 48-923.

■ The only activity of VOA shown to have taken place in Tennessee is that its employees have on occasion come into Tennessee on VOA's business, but it is not shown to what extent or when. It is shown that VOA has contracted for advertising that has appeared in magazines distributed in Tennessee and that has appeared on the air in this state, but it is not shown that any such advertising contracts were made in Tennessee. It is shown that VOA was authorized by and obligated to VWAG to perform certain supervision of Tennessee dealers; but we are not concerned, for present purposes, with what VOA was authorized or even obligated to do, we are concerned with what it did do in Tennessee. We therefore conclude that service of process could not be had on VOA under T.C.A. § 48-923.

Turning now to T.C.A. § 20-235, which has not yet been construed by the Tennessee appellate courts, it provides as follows:

"20-235. Jurisdiction of persons unavailable to personal service in state —Classes of actions to which applicable.—Persons who are nonresidents of Tennessee and residents of Tennessee who are outside the state and cannot be personally served with process

within the state are subject to the jurisdiction of the courts of this state as to any action or claim for relief arising from:

(a) The transaction of any business within the state;

(b) Any tortious act or omission within this state;

(c) The ownership or possession of any interest in property located within this state;

(d) Entering into any contract of insurance, indemnity, or guaranty covering any person, property, or risk located within this state at the time of contracting;

(e) Entering into a contract for services to be rendered or for materials to be furnished in this state.

'Person' as used herein shall include corporations and all other entities which would be subject to service or process if present in this state. Any such person shall be deemed to have submitted to the jurisdiction of this state who acts in the manner above described through an agent or personal representative. [Acts 1965, ch. 67 § 1.]"

Further, under T.C.A. § 20–239, it is provided:

"20–239. Limited application of law. —Only causes of action arising hereafter or heretofore from past or future transactions as set forth in § 20–235 may be asserted against the defendant in an action in which jurisdiction over him is based upon this law."

█ At the outset we should point out that the activity described in the statute must be the activity of the defendant or of someone authorized to act for the defendant.

█ Construing these two provisions together, it appears that a plaintiff who asserts a claim that does arise out of one of the described occurrences or transactions cannot, upon service of process under this statute, also maintain a claim that does not arise out of one of the described transactions or occurrences. Moreover, since it is the assertion of a cause of action that allegedly arises out of one of the described transactions or occurrences that is the basis for service of process, the alleged fact that the asserted cause of action did so arise is a jurisdictional fact. This means that, when jurisdiction is challenged, it must be determined whether the asserted cause of action did so arise in Tennessee. It does not mean that it must be determined at this stage and on the merits whether a plaintiff has such a cause of action; it does mean that it must be determined at this stage whether, if plaintiff does have such an asserted cause of action, it did arise out of one of the described transactions or occurrences in Tennessee.

█ We are still of the opinion, as we heretofore ruled, that service of process on VWAG is not valid insofar as plaintiffs sue for negligent manufacture, because the alleged "tortious act or omission" did not occur within this state, although the injury did occur within this state. In addition to cases cited in our opinion of June 10, 1966, in which similar statutes were so construed, we now quote from 18 Vanderbilt Law Review No. 3 at pages 1495–6:

"If the Tennessee Legislature had intended its law to include a situation where the act or conduct occurs outside the state and only the injury occurs within the state, another subsection could have been added to the law similar to the provision of the Uniform Interstate and International Procedure Act which clearly encompasses activity outside the state:

(3) causing tortious injury by an act or omission in this state;

(4) causing tortious injury in this state by an act or omission outside this state if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from

goods used or consumed or services rendered, in this state. * * * "

We believe that the claim in tort for misrepresentation against VWAG and VOA is covered by subsection (b) of T.C.A. § 20–235 as a "tortious act * * * within this state," since the representations are shown to have been made here. On the other hand, the claim against VWAG and VOA based on their sale of a defective and unreasonably dangerous chattel is not covered by any subsection of T.C.A. § 20–235, because they did not sell the automobile in Tennessee. The claim for breach of warranty, with privity, against VWAG is covered by subsections (a) and (d), since the written warranty, with VWAG's authority, was delivered here and this written warranty is claimed to supply the privity. The claim for breach of warranty, without privity, against VWAG and VOA gives more difficulty. Where it is recognized the theory is that the manufacturer, and perhaps a commercial seller in a chain of sellers, is held, without privity, to have warranted the chattel as to merchantability and perhaps fitness to the ultimate purchaser and that a claim thereon for breach is a hybrid tort—breach of contract claim. (See: Prosser on Torts (3rd), p. 651 et seq. and p. 672 et seq.) We therefore believe that, since the warranty would have been made and breached when the automobile was delivered to plaintiffs in Tennessee, this theory of claim would be covered by subsections (b) and (d) of T.C.A. § 20–235.

We will therefore amend our prior ruling so as to sustain service of process to the extent herein indicated.

VWAG, subsequent to our prior rulings, filed a motion for summary judgment with respect to the remaining claim against it for breach of warranty. We are of the opinion that, on the state of the present record, we should deny this motion. We also deny VWAG's motion to strike parts of the amended complaints as not well taken.