The **KROGER COMPANY**

v.

**ADKINS TRANSFER COMPANY,**
Inc., et al.

**Civ. No. 4539.**

United States District Court
M. D. Tennessee,
Nashville Division.

May 1, 1968.

William Harbison, Nashville, Tenn., Andrew Johnson, W. P. O'Neil, Ben W. Williamson, Jr., Knoxville, Tenn., for plaintiff.

R. B. Parker, Jr., Nashville, Tenn., for defendants Adkins Transfer Co., Inc., and Adkins Cargo Express, Inc.

S. McP. Glasgow, Jr., Nashville, Tenn., for defendant Rooks Transfer Lines, Inc.

Walter Harwood, Nashville, Tenn., for defendant Tennessee Cartage Co., Inc.

John J. Hooker, Nashville, Tenn., for defendants Harold Dornbos and Beverly Dornbos, individually, and doing business as H. J. Dornbos & Bro.

## MEMORANDUM AND ORDER

FRANK GRAY, JR., District Judge.

In this diversity action, the Kroger Company (hereafter Kroger) seeks indemnification for amounts expended in settling personal injury claims of various consumers who purchased allegedly deleterious "smoked white fish chubs" at certain Kroger retail stores in Kentucky, Tennessee, and Alabama. Kroger, a corporation organized under the laws of and having its principal place of business in Ohio, purchased the fish in question in September, 1963, from H. J. Dornbos & Bro., a Michigan partnership engaged in the processing and packaging of various fish products.

The following initially named defendants were the carriers involved in transporting this shipment of fish from the Dornbos plant in Grand Haven, Michigan, to the Kroger warehouse in Nashville, Tennessee: Rooks Transfer Lines, Inc. (hereafter Rooks), a Michigan corporation having its principal place of business therein (Grand Haven to Chicago, Illinois); Adkins Transfer Company, Inc. (hereafter Adkins),[1] an Indi-

---

1. Shortly after the purchase and shipment in question, the assets and stock of Adkins Transfer Company, Inc., were ac- quired by Adkins Cargo Express, Inc., also an Indiana corporation having its principal place of business in Tennessee,

ana corporation having its principal place of business in Tennessee (Chicago to Nashville); and Tennessee Cartage Company, Inc. (hereafter Tennessee Cartage), a Tennessee corporation having its principal place of business within this State (Adkins' Nashville terminal to the Kroger warehouse). The required jurisdictional amount is apparent on the face of the complaint.

Various motions raising procedural and jurisdictional questions have been filed by the parties herein. These will be considered infra in the following sequence.

## I

On February 2, 1968, Kroger filed a motion pursuant to Rule 15(a), Federal Rules of Civil Procedure, to amend its original complaint so as to join Harold Dornbos and Beverly Dornbos, individually, and doing business as H. J. Dornbos & Bro. (hereafter Dornbos) as additional parties defendant. The initial problem posed by this motion is whether the prior motions of Adkins for a more definite statement and for production and inspection pursuant to Rules 12(e) and 34, Federal Rules of Civil Procedure, respectively, and that of Rooks to dismiss the action as to it or, alternatively, to quash the return of summons, are "responsive pleadings" within the meaning of Rule 15(a) so as to defeat Kroger's right to amend as a matter of course. The bulk of the cases dealing with this point hold that pre-trial motions attacking pleadings, such as those filed herein by Adkins and Rooks, are not "responsive pleadings" within the purview of Rule 15(a). See, e. g., Fuhrer v. Fuhrer, 292 F.2d 140 (7th Cir. 1961); Kelly v. Delaware River Joint Commission, 187 F.2d 93 (3d Cir. 1951), cert. denied, 342 U.S. 812, 72 S. Ct. 25, 96 L.Ed. 614 (1951); Ohio Casualty Ins. Co. v. Farmers Bank of Clay, Ky., 178 F.2d 570 (6th Cir. 1949). Ac-

cordingly, since no responsive pleading had been filed at the time Kroger tendered its amended complaint, the motion to amend must be regarded as made in a timely manner.

A more complex issue raised by this motion to amend is the interrelated problem of the propriety of the joinder of Dornbos pursuant to Rule 19(a), Federal Rules of Civil Procedure, and of the allegation that Dornbos is subject to the jurisdiction of this court under the Tennessee "long-arm" statute, T.C.A. § 20–235 et seq. Rule 19(a) provides, in pertinent part, that:

"A person who is subject to service of process and whose joinder will not deprive the court of jurisdiction over the subject matter of the action shall be joined as a party in the action if (1) in his absence complete relief cannot be accorded among those already parties, * * *."

In response to Kroger's assertion of judicial jurisdiction by virtue of T.C.A. § 20–235 et seq., Dornbos has filed a motion seeking, *inter alia,* to dismiss this action as to it or, in lieu thereof, to quash the return of summons on the ground that it is not subject to the personal jurisdiction of Tennessee courts under the foregoing provisions. The common issue presented by both of the above motions, therefore, is whether Dornbos is subject to out-of-state service of process pursuant to T.C.A. § 20–235(b) which provides, in pertinent part, that:

"*Jurisdiction of persons unavailable to personal service in state—Classes of actions to which applicable.*—Persons who are nonresidents of Tennessee * * * are subject to the jurisdiction of the courts of this state as to any action or claim for relief arising from:

* * * * * *

"(b) Any tortious act or omission within this state;

* * * * * *

---

pursuant to an agreement providing that the latter would assume all obligations of the former either in contract and/or tort arising subsequent to August 31,

1963. Accordingly, as used hereinafter "Adkins" refers both to Adkins Transfer Company, Inc., and its successor Adkins Cargo Express, Inc.

" 'Person' as used herein shall include corporations and all other entities which would be subject to service or [sic: of] process if present in this state. Any such person shall be deemed to have submitted to the jurisdiction of this state who acts in the manner above described through an agent or personal representative."

The resolution of this question involves the following two determinations: (1) whether the jurisdictional facts alleged by Kroger are such as to authorize service of process under T.C.A. § 20–235(b) and § 20–236 and, if so, (2) whether the exercise of in personam jurisdiction thus authorized is compatible with the due process clause of the Fourteenth Amendment. See Fayette v. Volkswagen of America, Inc., 273 F.Supp. 323, 326 (W. D.Tenn.1967); cf. Temco, Inc. v. General Screw Products, Inc., 261 F.Supp. 793, 796 (M.D.Tenn.1966).

The relevant[2] jurisdictional facts alleged in the amended complaint, in substance, are that Dornbos negligently processed, inspected, and shipped the fish in question in that certain inherently deleterious and potentially toxic substances were not rendered harmless. Kroger, alleging that it was unable to detect these contaminants, distributed this product to certain of its retail supermarkets where it was purchased by various customers who thereafter contracted a type of food poisoning which resulted in personal injuries and deaths. Consequently, certain actions were commenced in Tennessee and other jurisdictions charging Kroger with negligence, violations of State and Federal Pure Food and Drug Laws, and with breaches of warranty. Kroger, deeming itself legally liable, settled these claims allegedly after having given adequate notice to all defendants herein of the filing and pendency of these actions.

When viewed in the context of the foregoing allegations, it is clear that the first of the above inquiries calls for a construction of the statutory language "[a]ny tortious act or omission within this state."

■ At the outset, however, some attention must be given to the contention of Dornbos that T.C.A. § 20–235 et seq.[3] cannot be applied retroactively to confer jurisdiction based on an event or transaction occurring prior to its passage. Upon consideration, it is the opinion of the court that the express language of T.C.A. § 20–239[4] is dispositive of this question and, therefore, that this contention is without merit. See Note, Expanded Bases of Jurisdiction—An Examination of Tennessee's New "Long-Arm" Statute, 18 Vand.L.Rev. 1484, 1504 (1965).

■ The arguments raised by Dornbos in support of its conclusion that T.C.A. § 20–235(b) is inapplicable to the instant factual allegations are essentially twofold: first, that an action for indemnity is premised upon either an express or implied contract, not upon the allegedly tortious conduct of the indemnitor, and, secondly, that any allegedly tortious conduct for which it could be held liable occurred exclusively in Michigan and therefore did not take place "within this state" as is required by T.C.A. § 20–235(b).

This first contention is not well taken. In the closely analogous case of Beetler v. Zotos, 388 F.2d 243 (7th Cir. 1967), the court was faced with this same issue, that is, whether an action for indemnification against a nonresident indemnitor comes within § 17(1) (b) of the Illinois

2. Additionally, it is asserted that the defendants Rooks, Adkins and Tennessee Cartage failed to maintain this shipment in a refrigerated condition during transit. This and related allegations will be considered infra in the context of the motions filed by Rooks and Adkins.

3. Pub.Acts Tenn., 1965, ch. 67.

4. *"Limited application of law.*—Only causes of action arising hereafter or heretofore from past or future transactions as set forth in § 20–235 may be asserted against the defendant in an action in which jurisdiction over him is based upon this law."

"long-arm" statute which predicates in personam jurisdiction, as does T.C.A. § 20–235(b), upon "[t]he commission of a tortious act within this State."[5] In concluding that out-of-state service of process pursuant to § 17(1)(b) was valid, the Court of Appeals reasoned that:

"an indemnitee, where he seeks to recover for damages paid for injuries caused by the negligent or wrongful act of the indemnitor, may proceed by action ex delicto, as by an action on the case—a tort action." (388 F.2d at 245) [Citations omitted.]

The second prong of Dornbos' attack on the applicability of T.C.A. § 20–235(b) poses the more difficult question of whether this provision encompasses a situation where an injury within the forum is allegedly the proximate result of tortious conduct occurring without the forum. Since the only two reported decisions dealing with this aspect of T.C.A. § 20–235(b) reached opposite conclusions,[6] it is necessary to search for additional precedential authority.

In Temco, Inc. v. General Screw Products, Inc., supra, this court discussed the substantial identity of the Tennessee and Illinois "long-arm" statutes:

"The similarity of the statutes indicates that the Illinois act may well have been a guide to the drafter of the Tennessee statute. This conclusion is reinforced by the fact that the Illinois law is one of the older "long-arm" statutes and has been copied by several states, including New York and Oregon. Even if that is not the case, however, Illinois case law would still furnish an excellent basis for predicting how the Tennessee courts will interpret Tennessee's very similar statute." (261 F.Supp. at 798)

In the leading Illinois case of Gray v. American Radiator & Standard Sanitary Corp., 22 Ill.2d 432, 176 N.E.2d 761 (1961), the plaintiff was injured in Illinois by the explosion of a hot water heater caused by a defective safety valve. The defective valve had been manufactured by the defendant Ohio corporation and sold to a Pennsylvania firm which installed the valve in Pennsylvania and shipped the finished product into Illinois. The Illinois Supreme Court, focusing upon the choice-of-law rule that a wrong occurs where the last event necessary to render the actor liable takes place, held that the Ohio corporation had committed a "tortious act within [Illinois]" within the meaning of the Illinois "long-arm" statute. Ill.Rev.Stat.1965, ch. 110 § 17(1)(b). Thus, the position adopted by the Illinois courts in construing language substantially identical to that of T.C.A. § 20–235(b) is that a tortious act continues from the point of commission to the point of injury so that foreign misconduct resulting in injurious forum consequences may, consistent with the strictures of the due process clause, be treated as occurring within the forum for jurisdictional purposes.

In the instant situation, the bases of the indemnity are alleged to be the injuries sustained by certain of Kroger's customers in Tennessee. Accordingly, it is the opinion of the court that the jurisdictional fact of negligence recited in the amended complaint constitutes a "tortious act or omission within this state" so as to render Dornbos subject to service of process pursuant to T.C.A. 20–236. Tate v. Renault, Inc., 278 F.Supp. 457 (E.D.Tenn.1967); accord, Beetler v. Zotos, 388 F.2d 243 (7th Cir. 1967); Gray v. American Radiator & Standard Sanitary Corp., 22 Ill.2d 432, 176 N.E.2d 761 (1961). Contra: Fayette v. Volkswagen of America, Inc., 273 F.Supp. 323 (W.D.Tenn.1967); Feathers v. McLucas, 15 N.Y.2d 458, 261 N.Y.S.2d 19, 209

---

5. Ill.Rev.Stat.1965, ch. 110, § 17(1)(b).

6. Compare Tate v. Renault, Inc., 278 F. Supp. 457 (E.D.Tenn.1967) (foreign tortious conduct resulting in forum injury amounts to tort committed "within this state") and Fayette v. Volkswagen of America, Inc., 273 F.Supp. 323 (W.D. Tenn.1967) (foreign tortious conduct does not constitute a "tortious act or omission within this state," notwithstanding consequent forum injury).

N.E.2d 76 (1965); Note, 18 Vand.L.Rev. 1484, 1495–1496 (1965).

■ The remaining jurisdictional problem posed by the amended complaint is whether exercising the in personam jurisdiction so authorized would be consistent with the limitations placed by the due process clause upon the power of a state to assert judicial jurisdiction over nonresidents. In International Shoe Co. v. State of Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945), the Supreme Court expanded the traditional standards of "consent," "doing business," and "presence" previously used to measure the extent of state judicial power over nonresidents and foreign corporations by holding that due process does not necessarily require the presence of a nonresident defendant within the forum state. Thus, under the doctrine of *International Shoe,* where a cause of action arises from a nonresident defendant's "contacts" with the territorial forum:

> "due process requires only that in order to subject a defendant to a judgment in personam, if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" (326 U.S. at 315, 66 S.Ct. at 158) [Citations omitted.]

In Hanson v. Denckla, 357 U.S. 235, 251, 78 S.Ct. 1228, 1238, 2 L.Ed.2d 1283 (1958), the Court further held that this "minimum contacts" standard could be satisfied only where the defendant by some act intentionally availed itself of the "privilege of conducting activities within the forum State, thus invoking the benefits and protection of its laws."

The pleadings and memoranda filed herein indicate that the shipment in question was not an isolated transaction, but rather was within the scope of Dornbos' normal dealings with Kroger. Therefore, since Dornbos' product entered Tennessee in the course of its normal business transactions, it is the opinion of the court that Dornbos' contacts with Tennessee are sufficient within the meaning of *International Shoe* and Hanson v. Denckla to render it subject to the jurisdiction of Tennessee courts under T.C.A. § 20–235 et seq., and, consequently, that the joinder of Dornbos under Rule 19(a), Federal Rules of Civil Procedure, is proper. Accordingly, the motion of Dornbos to dismiss the action as to it or, alternatively, to quash the return of summons is hereby denied.

■ Dornbos also urges that, assuming jurisdiction under T.C.A. § 20–235 et seq., this action is nonetheless subject to dismissal pursuant to 28 U.S.C. § 1406(a) on the ground that venue is improperly laid in the Middle District of Tennessee because the instant action for indemnity did not arise in this District within the meaning of 28 U.S.C. § 1391 (a). This assertion is not well taken. Upon consideration, it is the opinion of the court that, inasmuch as the claim for indemnity is predicated, in part, upon injuries allegedly sustained by certain of Kroger's customers in the Middle District of Tennessee, venue in this District is proper. Cf. Rosen v. Savant Instruments, Inc., 264 F.Supp. 232 (E.D.N.Y. 1967). Accordingly, Dornbos' motion to dismiss for improper venue is hereby denied.

■ Finally, Dornbos seeks a stay of these proceedings pending the final determination on the merits of a prior action commenced in the Circuit Court of Ottawa County, Michigan, which it is asserted involves the same issues and parties as the instant litigation. In the absence of any compelling reasons warranting such action, it is the opinion of the court that this motion must also be denied.

## II

Jurisdictional problems similar to those presented by the foregoing motion of Dornbos are also raised by the motion of the defendant Rooks to dismiss this action as to it, or alternatively, to quash the return of summons on the ground that it is not subject to service of process under T.C.A. § 20–235 et seq. This motion is premised upon the follow-

ing contentions: first, that Rooks, a common carrier limited by its Certificate of Public Convenience and Necessity to routes from various points in Michigan to Chicago, Illinois, has not engaged in any of the activities prescribed by T.C.A. § 20–235, and, secondly, that Adkins was not, as is alleged in the original and amended complaints, its agent with respect to the instant shipment and consequently Adkins' activities cannot be imputed to it for the purpose of conferring jurisdiction.

The basic jurisdictional facts alleged in the amended complaint as subjecting Rooks to service of process pursuant to T.C.A. § 20–235 are that the fish in question were refrigerated when accepted for shipment by Rooks; that during transit, Rooks, Adkins, and Tennessee Cartage negligently allowed this shipment to be transported and stored without refrigeration for unreasonable periods of time; that the connecting carrier Adkins must be regarded as the agent of the initial carrier Rooks in completing the contract of carriage; that the carriage of this shipment in an unrefrigerated condition had the effect of causing the potentially deleterious substances in this product to become toxic, thereby rendering it unfit for human consumption; and that prior to delivery to Kroger's Nashville warehouse, Tennessee Cartage restored this shipment to its original refrigerated state, thereby concealing its actual condition in transit.

At the outset, it should be noted that the foregoing allegations are being considered only in terms of their jurisdictional import:

"[S]ince it is the assertion of a cause of action that allegedly arises out of one of the * * * [T.C.A. § 20–235] transactions or occurrences that is the basis for service of process, the alleged fact that the asserted cause of action did so arise is a jurisdictional

fact. This means that when jurisdiction is challenged, it must be determined whether the asserted cause of action did so arise in Tennessee. It does not mean that it must be determined at this stage and on the merits whether a plaintiff has such a cause of action; it does mean that it must be determined at this stage whether, if plaintiff does have such an asserted cause of action, it did arise out of one of the described transactions or occurrences in Tennessee." Fayette v. Volkswagen of America, Inc., 273 F. Supp. at 328.

■ In this context, the critical allegation is recited at page 5 of the amended complaint:

"During transit, * * * said defendants, Rooks, Adkins and Tennessee Cartage, * * * in breach of their duties, as common carriers for hire, * * * caused and permitted said fish to be transported and stored for an unreasonable period of time without refrigeration, * * *."

After careful consideration, it is the opinion of the court that the thrust of this contention is that Rooks, as well as Adkins and Tennessee Cartage, negligently transported this shipment. Accordingly, under this court's prior determination that a tortious act within the meaning of T.C.A. § 20–235(b) must be regarded as having occurred in Tennessee where the consequent injury is sustained in Tennessee, it is clear that Rooks' alleged negligence comes within the conduct prescribed by T.C.A. § 20–235(b).

■ Moreover, it is the opinion of the court that Rooks and Adkins, as initial and connecting carriers in the instant shipment, stand in the relation of principal and agent [7] and that Rooks, by virtue of this agency relationship, has sufficient "minimum contacts" with Ten-

---

7. See 14 Am.Jur.2d Carriers § 689, page 188; cf. Merchants' Dispatch Transportation Co. v. Bloch Brothers, 86 Tenn. 392, 6 S.W. 881 (1887).

nessee to subject it to the jurisdiction of this court pursuant to T.C.A. § 20–235 et seq.

Accordingly, the motion of Rooks to dismiss this action as to it or, in the alternative, to quash the return of summons is denied.

### III

 Pursuant to Rule 12(e), Federal Rules of Civil Procedure, Adkins has filed a motion requesting the court to require Kroger to furnish a more definite statement with respect to the facts supporting the allegation in the amended complaint that the settlements entered into by Kroger were reasonable. Upon consideration, it is the opinion of the court that the nature of this action is such that the preparation of responsive pleadings probably requires a more detailed statement of the facts underlying Kroger's conclusion that the settlement agreements entered into were reasonable. Accordingly, this motion, insofar as it seeks a more definite statement regarding the amounts of these settlements, the persons with whom they were entered into including the persons for whose benefit these settlements were made, a brief statement of the claim involved in each settlement, the dates of these settlements, and related attorneys' fees and expenses, is hereby granted.

Additionally, Adkins has filed a motion pursuant to Rule 34, Federal Rules of Civil Procedure, seeking the production for inspection and/or copying of all settlement agreements and contracts, court orders, and other documents underlying the instant claim for indemnity. The court is of the opinion that no adequate showing is made that the information to be so obtained is necessary for the preparation of responsive pleadings. It may well be necessary for the preparation of a defense at the trial of this action, but appears premature at this time. Accordingly, the motion is denied.

It is so ordered.