Ruby VELANDRA and Roy Velandra, Plaintiffs-Appellants,

v.

REGIE NATIONALE DES USINES RE-NAULT and Renault, Inc., Defendants-Appellees.

No. 15362.

United States Court of Appeals Sixth Circuit.

Sept. 10, 1964.

David R. Goldberg, Toledo, Ohio, Kitchen & Kitchen, Toledo, Ohio, on the brief, Cubbon & Rice, Toledo, Ohio, of counsel, for appellants.

Frank E. Kane, Toledo, Ohio, Ward, Plunkett & Cooney, Detroit, Mich., on the brief, Eastman, Stichter, Smith & Bergman, John R. Eastman, Toledo, Ohio, of counsel, for appellees.

Before McALLISTER and O'SULLIVAN, Circuit Judges, and WILSON, District Judge.

FRANK W. WILSON, District Judge.

In these products liability lawsuits it is alleged that the plaintiff, Ruby Velandra, sustained severe and permanently disabling personal injuries, and that the plaintiff, Roy Velandra, sustained medical expenses, loss of services, and loss of consortium, all as the result of an automobile accident in Michigan caused by defective brakes in a Renault automobile manufactured in France by the defendant, Regie Nationale des Usines Renault (Regie), and imported into the United States by the defendant, Renault, Inc. (Renault), before ultimate sale to the plaintiffs in Ohio.

The plaintiffs commenced their suits in the United States District Court for the Eastern District of Michigan, for negligent manufacture and for breach of express and implied warranties. The complaints claim federal jurisdiction upon the basis of diversity of citizenship and amount in controversy, alleging that the plaintiffs are citizens of Michigan, that defendant Renault is a New York corporation, and that defendant Regie is a French corporation.[1]

1. The complaint contains no allegation of the principal place of business of each defendant. Title 28 U.S.C.A. § 1332(c). On the other hand, it clearly appears from affidavits filed below that neither defendant in fact has its principal place of business in Michigan. Because defective allegations of jurisdiction in a complaint may be amended at any time, Title 28 U.S.C.A. § 1653, no purpose

Neither defendant having a place of business or agent for the service of process in Michigan, service was obtained upon the Secretary of State for Michigan, "pursuant to the appropriate statutory provision for substituted service."[2] Both defendants moved to dismiss for lack of personal jurisdiction, and the District Court, after the submission of affidavits and counter-affidavits, found that it did lack jurisdiction over the defendants, sustained the motions, and dismissed the complaints, all without filing a written opinion. These appeals followed.

[■] Some argument has been devoted to the question whether, under the principle of Erie R. Co. v. Tompkins,[3] state law rather than federal law governs the personal jurisdiction of a federal court over foreign corporations in diversity cases. This vexing question[4] remains a source of controversy in other jurisdictions,[5] but was recently resolved in favor of state law by this Court.[6] In determining the personal jurisdiction of a federal court located in Michigan over these foreign corporations, this Court must therefore look to the law of Michigan.[7]

would be served by dismissing the suits for lack of proper allegations of diversity of citizenship at this time.

2. There is no quotation of or citation to the particular Michigan statute under which substituted service of process was made. The omission is not crucial, because the Michigan standard for the exercise of judicial in personam jurisdiction over foreign corporations clearly appears in a recent Michigan case. Note 8, infra. In any event, the appellees have not challenged the statement in the appellants' brief that "There is no issue with regard to the procedure of obtaining service."

3. 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188.

4. See e. g., First Flight Co. v. National Carloading Corp. (S.D.,E.D.Tenn., 1962), 209 F.Supp 730; Green, Federal Jurisdiction in Personam of Corporations and Due Process, 14 Vand.L.Rev. 967 (1961).

5. E.g., Arrowsmith v. United Press International (2 Cir., 1963), 320 F.2d 219, overruling Jaftex Corp. v. Randolph Mills, Inc. (2 Cir. 1960), 282 F.2d 508, 516 (alternative holding); Comment, Federal Jurisdiction over Foreign Corporations and the Erie Doctrine, 64 Col. L.Rev. 685 (1964). See esp. Judge Clark's vehement dissenting opinion in the Arrowsmith case.

6. Smartt v. Coca-Cola Bottling Corp. (6 Cir., 1963), 318 F.2d 447.

7. The Court may observe, incidentally, that some question might have been raised as to whether Regie, as the corporation of a foreign nation rather than a foreign state, should be treated differently than Renault. In a recent article Professor Elliott E. Cheatham has observed as follows:

"In this country, the principles of conflict of laws developed primarily in interstate matters. * * * When international cases came up, the principles developed in the *intra*national cases were transferred almost unquestioningly to the *inter*national matters." [Cheatham, Some Developments in Conflict of Laws, 17 Vand.L.Rev. 193, 200 (1963).]

Professor Cheatham goes on to approve this practice, however. After having noted that the case of McGee v. International Life Ins. Co., 355 U.S. 220, 222–223, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957) had explained recent expansions in state court jurisdiction in terms of "the fundamental transformation for our national economy over the years," "increasing nationalization of commerce," and "modern transportation and communication," which make it "less burdensome for a party sued to defend himself in a State where he engages in economic activity," [Cheatham, Some Developments in Conflict of Laws, 17 Vand.L.Rev. 193, 195 (1963).] Professor Cheatham declares that the practice of applying interstate principles to international problems "is fortunate in these days of expanding international relations." Ibid., 200.

On another point, Professor Cheatham refers to "the question whether international conflict of laws is governed by state law or by federal law," and states as follows:

"It has been widely assumed that except for treaties and federal statutes it is governed by state law, thus varying from state to state. * * * The question cannot be answered yet." [Ibid., 200–201.]

Because the parties have raised no question as to the foregoing matters, and in view of the Professor Cheatham's comments thereon, the Court mentions these

The law of Michigan in this regard may be found in the case of Jennings v. WSM, Inc.,[8] where the Supreme Court of Michigan confirmed its adherence to the rule of the landmark case of International Shoe Company v. Washington.[9] In that case the United States Supreme Court held that under the Due Process clause of the Fourteenth Amendment of the United States Constitution a state court may exercise personal jurisdiction over a foreign corporation having such "minimum contacts" with the State of the forum that the exercise of jurisdiction does not offend " 'traditional notions of fair play and substantial justice.' "[10]

The Court must therefore first look to see what "contacts" the defendants each have with the State of Michigan under the facts of this case. It is apparent that any definition of "minimum contacts," if not also any definition of "traditional notions of fair play," will require an evolutionary process rather than a quick definitive statement, as these terms involve subjective judgments that must be based upon a multitude of variant factors as they are presented in a

multitude of cases. The existence or nonexistence of the necessary "minimum contacts" to justify the upholding of personal jurisdiction over foreign corporations under the Fourteenth Amendment as interpreted in the International Shoe Company case must obviously be worked out with reference to the facts of a particular case rather than in a statement of dogmatic rules of all-inclusive principles.

Affidavits filed by the parties in support of and in opposition to the motions to dismiss below establish the general nature and extent of the defendants' activities within and their relationship to the State of Michigan. The following appear to be the facts upon which this opinion must be based.

Regie is a French corporate manufacturer of Renault automobiles.[11] Regie exports its automobiles into the United States through Renault, a New York corporation which is a wholly owned subsidiary of Regie and the exclusive American importer of Renault automobiles. Renault in turn distributes these automobiles to dealers throughout the United States by means of regional distributors,

matters only in passing, and will proceed to apply the law of Michigan to Regie as well as to Renault.

8. 369 Mich. 210, 119 N.W.2d 598, 599 (1963).

9. 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945).

10. 326 U.S. 310, 316, 66 S.Ct. 154, Michigan's extension of its jurisdiction over foreign corporations to the limits permitted by the Fourteenth Amendment by no means necessarily signifies that the Michigan standard in this regard is identical to what the federal standard would be if the Erie principle were held inapplicable to questions of personal jurisdiction over foreign corporations in diversity cases. The statute from which the federal standard might be derived [Arrowsmith v. United Press International, (2 Cir. 1963), 320 F.2d 219, 242 (dissenting opinion)], and/or the Fifth Amendment [First Flight Company v. National Carloading Corporation, (S.D., E.D.Tenn., 1962), 209 F.Supp. 730, 738], would mark the limits upon personal jurisdiction, rather than the Fourteenth Amendment.

11. The defendants have emphasized that Regie is not a private corporation, but rather is

"An instrumentality of the Government of the Republic of France under the direction of a President General Manager appointed by the French Government, and controlled by a board of directors some of whom are appointed by the Executive Department of the French Government and some of whom represent the financial and business community of France and the users of Renault's products."

The defendants have advanced no argument, however, that Regie should be treated differently than a private corporation for purposes of passing upon its amenability to the jurisdiction of the District Court.

Compare Restatement, Foreign Relations Law of the United States, sec. 72 (1962), with Cheatham, Some Developments in Conflict of Laws, 17 Vand.L. Rev. 193, 200 (1963):

"[T]he great increase of commercial activities by foreign nations and national agencies requires modification of the old principle that a foreign nation is immune from judicial jurisdiction."

one of which at the time of the commencement of these suits was Renault Great Lakes, Inc. (Great Lakes), an Illinois corporation which is wholly owned by Renault, and which is the Renault distributor for the midwestern region of the United States, including the State of Michigan. Great Lakes carries on substantial economic activities in Michigan, among other things locating and granting franchises to Michigan dealers, and delivering to those dealers the automobiles it has purchased from Renault. The only evidence put into the record with regard to the volume of sales of Renault automobiles in Michigan is that there are three dealers in Detroit, one of whom sells a "substantial" number of Renaults, resulting in gross sales "upward" of $100,000.00. There is also evidence that at the time of a dealer retail sale to an individual in Michigan, an express written warranty in Regie's name is delivered to the purchaser.[12]

Do the above facts establish such "minimum contacts" with the State of Michigan as to satisfy "traditional notions of fair play" so as to properly subject the defendant foreign corporation to the personal jurisdiction of the courts of Michigan?

■ Considering first the chain of corporate ownership, Regie owns 100% of

the stock of Renault, and Renault in turn owns 100% of the stock of Great Lakes, which, as indicated, carries on substantial economic activities within the State of Michigan. However, the mere ownership by a corporation of all of the stock of a subsidiary amenable to the jurisdiction of the courts of a state may not *alone* be sufficient to justify holding the parent corporation likewise amenable.[13] In the early case of Cannon Mfg. Co. v. Cudahy Packing Co.,[14] the Supreme Court held that the activities of a subsidiary did not subject its parent corporation to the personal jurisdiction of local courts.

It should be noted that the ruling of the Cannon case, if not qualified by the subsequent ruling in the International Shoe Company case, has been at least qualified in later cases holding foreign corporations amenable to the personal jurisdiction of local courts because of the local activities of subsidiary corporations upon the theory that the corporate separation is fictitious,[15] or that the parent has held the subsidiary out as its agent,[16] or, more vaguely, that the parent has exercised an undue degree of control over the subsidiary.[17]

Unfortunately, such reasoning in these and similar cases,[18] fails to explain the

---

12. Such evidence appears from the affidavit of a Renault dealer in Detroit. This affidavit also recites that the affiant therein has visited the manufacturing facilities and offices of Regie in France, "partially at the expense of" Regie, and that representatives of Regie and of Renault have from time to time visited his facilities in Detroit "for the purpose of visitation." But this would appear to be too general an allegation to be significant. This affidavit was filed by the plaintiff, not at the original hearing on the motion to dismiss, but in support of a motion to rehear. It was, however, before the Trial Court at the time it entered its finding and order that the petition to rehear was without merit.

13. See Pergament v. Frazer, 93 F.Supp. 9 (E.D.Mich., 1949).

14. 267 U.S. 333, 45 S.Ct. 250, 69 L.Ed. 634 (1925).

15. See, e. g., Intermountain Ford Tractor Sales Co. v. Massey-Ferguson Limited (C.D.Utah, 1962), 210 F.Supp. 930. The plaintiffs in the present case allege a fictitious corporate separation between Renault and Regie, but the record contains no evidence whatever that would justify the piercing of corporate veils, or the disregarding of corporate entities, under the principles traditionally associated with these matters.

16. See, e. g., Curtis Publishing Company v. Cassel (10 Cir., 1962), 302 F.2d 132.

17. See, e. g., Focht v. Southwestern Skyways, Inc. (Colo., 1963), 220 F.Supp. 441.

18. See Foster, Personal Jurisdiction Based on Local Causes of Action, 1956 Wis.L. Rev. 522, 563; Developments in the Law —State-Court Jurisdiction, 73 Harv.L. Rev. 909, 933 (1960); Annot., 18 A.L.R. 2d 187.

decisions of the courts adequately.[19] Thus the law relating to the fictions of agency and of separate corporate entity was developed for purposes other than determining amenability to personal jurisdiction, and the law of such amenability is merely confused by reference to these inapposite matters.

The International Shoe decision represented an effort by the Supreme Court to clarify earlier concepts in the area of the amenability of foreign corporations to the personal jursidiction of state courts by sweeping aside any lingering notions that the earlier shibboleths of "consent," "presence," and "doing business" were self-defining abstractions, and by redefining those tests in terms of "minimum contacts." [20] Following this decision it would seem appropriate, for the purpose of determining the amenability to jurisdiction of a foreign corporation which happens to own a subsidiary corporation carrying on local activities, to inquire whether the parent has the requisite minimum contacts with the State of the forum. Thus the ownership of the subsidiary carrying on local activities in Michigan represents merely one contact or factor to be considered in assessing the existence or non-existence of the requisite minimum contacts with the State of Michigan,[21] but is not sufficient of itself to hold the present foreign corporations amenable to personal jurisdiction.

Another contact alleged to exist between the defendant and the State of Michigan is the sale of the defendant's product, Renault automobiles, within the State of Michigan and the delivery within the State of a warranty thereon, to which warranty the defendant Regie is a party. It is proper to note that it has come to be increasingly recognized that activities— in particular sales of products—outside a state resulting in consequences within the state may subject the actors to the personal jurisdiction of the courts within the state.[22] In this regard the plaintiff relies strongly upon the case of Regie Nationale des Usines Renault v. The Superior Court of the State of California, 208 Cal.App.2d 702, 25 Cal.Rptr. 530, wherein the Court held these same defendants to be subject to the personal jurisdiction of a court in California under somewhat analogous circumstances. While the legal principles there enunciated as distinguished from the factual situation there before the Court, may be relevant to a resolution of the legal issues of "minimum contact" and "fair play" in this case, under the facts as they appear in the record of this case we are of the opinion that no sufficient showing has been made with reference to sales of the defendant's products within Michigan to establish such minimum contacts within the State as to warrant subjecting the defendants to the personal jurisdiction of a court in Michigan. In determining whether minimum contacts exist on the

19. Developments in the Law—State-Court Jurisdiction, 73 Harv.L.Rev. 909, 933 (1960).

20. See McGee v. International Life Ins. Co., 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed. 2d 223 (1957).

21. The degree or extent of the ownership of such a subsidiary may also be important in assessing the nature and quality of the requisite minimum contacts of a parent corporation with a state in which its subsidiary is carrying on local activities. The parent might, for example, own only 99% or 51% or a minority but nevertheless controlling interest in the subsidiary, or the ownership might be divided in various proportions between two or more related or unrelated corporations, or between one or more corporations and one or more individuals, and so on. The point is, of course, that an analytical rather than a mechanical or formalistic approach is appropriate upon the issue of personal jurisdiction based upon ownership of the stock of a corporation carrying on local activities.

22. Compare Gray v. American Radiator and Standard Sanitary Corp., 22 Ill.2d 432, 176 N.E.2d 761 (1961), with Hellriegel v. Sears Roebuck & Company (N.D. Ill., 1957), 157 F.Supp. 718. See also Singer v. Walker, 21 A.D.2d 285, 250 N.Y.S.2d 216 (1964).

basis of the presence or sale of a product within a state, the extent of the contact is related to a number of factors, including the number and value of sales within the state, their ratio to the total market for like or similar products within the state, the quantity or value of the defendant's production, the percentage of the total output sold within the state, as well as the nature of the product, particularly with reference to whether it is inherently dangerous or not. Obviously the manufacturer of a product that has a significant market within a state has more contact with that state than one whose product only has a minimal market. Likewise, a manufacturer whose total product or a large percentage of whose product is sold within a state has a more significant contact with that state than would be the case where only casual sales were made within the state or only a small portion of the manufacturer's production was sold within the state. Finally, the nature of the product may well have a bearing upon the issue of minimum contact, with a lesser volume of inherently dangerous products constituting a more significant contact with the state than would a larger volume of products offering little or no hazard to the inhabitants of the state. A careful and discriminating analysis of the nature and quality of the defendants' contacts with the foreign state must be made in each case.

All that appears in the record in this case is that three dealers for the sale of Renault automobiles exist in the City of Detroit and that one of these sells a "substantial" number of Renault automobiles, having gross sales of "upwards" of $100,000. This record of dealerships and sales, even when considered together with the existence of a subsidiary corporation doing business within the State and the distribution of warranties with automobiles sold, does not in our opinion establish a sufficient showing of contacts between the defendants and the State of Michigan so as to constitute the minimum contacts essential to permit the exercise of personal jurisdiction in that State over these foreign corporations under the International Shoe Company case.

The judgment of the Trial Court is therefore affirmed.