John STEWART, Plaintiff,

v.

BUS AND CAR CO., Defendant.

Civ. No. C 68–166.

United States District Court
N. D. Ohio, W. D.

Dec. 2, 1968.

Cubbon & Rice, Toledo, Ohio, for plaintiff.

Finn, Manahan, & Pietrykowski, Toledo, Ohio, for defendant.

## MEMORANDUM

DON J. YOUNG, District Judge.

This is a personal injury suit wherein jurisdiction is predicated upon diversity of citizenship, and the foreign corporate defendant has entered its appearance for the limited purpose of moving to dismiss the action.

Defendant is the manufacturer of a 1965 Silver Eagle Bus which was involved in the injury of the plaintiff during the course of his duties as a bus driver for Continental Trailways, Inc., and defendant has its offices in Brugge, Belgium. Plaintiff served his complaint and summons upon the Secretary of State in Columbus, Ohio, presumably in reliance upon the provisions of Section 2307.383 of the Ohio Revised Code, which authorize such services when personal jurisdiction is founded upon § 2307.382 of the Ohio Revised Code. Although the defendant has also moved to quash the service of process, it is clear that this motion also goes to the allegation of no jurisdiction over the person of the defendant under Section 2307.382, for there are no claims made that the mechanics of plaintiff's service did not comply with Section 2307.383.

Ohio Revised Code Sections 2307.381–2307.385, effective September 28, 1965, are commonly referred to as the state's "long-arm statute," and the expanded effect upon jurisdiction which the sections allow may be utilized by the federal district courts under the Federal Rules of Civil Procedure, in this case specifically Rules 4(e) and 4(i) as amended in 1963, as well as under decisional law at the federal level.[1] The substantive provisions of the Ohio statute are found in Section 2307.382 of the Ohio Revised Code, and that section provides as follows:

"2307.382 Personal Jurisdiction.

"(A) A court may exercise personal jurisdiction over a person who acts directly or by an agent, as to a cause of action arising from the person's:

(1) Transacting any business in this state;

(2) Contracting to supply services or goods in this state;

(3) Causing tortious injury by an act or omission in this state;

(4) Causing tortious injury in this state by an act or omission outside this state if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this state;

(5) Causing injury in this state to any person by breach of warranty expressly or impliedly made in the sale of goods outside this state when he might reasonably have expected such person to use, consume, or be affected by the goods in this state, provided that he also regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this state;

(6) Having an interest in, using, or possessing real property in this state;

(7) Contracting to insure any person, property, or risk located within this state at the time of contracting.

---

1. See, for example, Smartt v. Coca-Cola Bottling Corp., 318 F.2d 447 (6th Cir. 1963), wherein it was held that state law rather than federal governed the personal jurisdiction of a federal court over foreign corporations in diversity cases.

"(B) When jurisdiction over a person is based solely upon this section, only a cause of action arising from acts enumerated in this section may be asserted against him. (Eff. 9–28–65)"

Ohio is but one of many states that have passed similar statutes, most of which attempt to expand the state's jurisdictional powers to their permissible limits under the due process clause of the fourteenth amendment.[2] The Ohio Act is very similar to the Illinois long-arm statute, which was the first state legislation of the type to be enacted, and the Illinois act is said to be based upon the decision of the United States Supreme Court in International Shoe Co. v. State of Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945).[3] Under that decision, a defendant must have enough "minimal contacts" with the forum state in order that the suit against it in that state does not "offend 'traditional notions of fair play and substantial justice.'" International Shoe Co. v. State of Washington, supra, at 316, 66 S.Ct. at 158. Since the contacts alleged to be sufficient necessarily vary from case to case, the doctrine of *International Shoe* has been applied in an *ad hoc* manner, but nevertheless followed in its broad implications, and the Supreme Court has repeatedly adhered to the "minimum contacts" test of state jurisdiction over non-residents.[4] Perhaps because of the wide range of fact situations which have been presented to the courts, the decisions of what *constitutes* minimum contacts under the rulings of the Supreme Court, or under the language of particular state statutes, are

somewhat in conflict. In a case often considered to be the "high-water" mark of jurisdictional expansion by the United States Supreme Court, jurisdiction was upheld under the scrutiny of the due process clause over a foreign insurer where the only contacts with the forum state were the delivery of the contract there, the mailing of the premiums from there, and the residence of the insured there. McGee v. International Life Ins. Co., 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957). In that case, the Court noted the trend of expanding personal jurisdiction over non-residents, the increased flow of commerce between states and nations from technological progress, and the changes in communication and transportation which have made the defense of a lawsuit in a foreign tribunal less burdensome than was previously the case. However, in another case a year later, the Court warned that it was a mistake to assume that this trend "heralds the eventual demise of all restrictions on the personal jurisdiction of state courts," stating that the basis for the "minimum contacts" requirement was not solely immunity from inconvenience, but rather the due process limitations on the territorial powers of the states. Hanson v. Denckla, 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283, reh. den. 358 U.S. 858, 79 S.Ct. 10, 3 L.Ed.2d 92 (1958). The *Hanson* decision did reiterate the principles found in *International Shoe* and *McGee*, however, and the only language of a specific nature which might aid other courts in the future which are faced with determining whether minimal contacts exist is a statement by the Court that " * * * it is essen-

2. The strictest statement of these limits is to be found in the famous case of Pennoyer v. Neff, 95 U.S. 714, 24 L.Ed. 565 (1877), which later gave way to the more recent decisions of the Supreme Court in International Shoe and McGee, infra, as well as other similar decisions, these later holdings establishing a trend toward broadening a state's jurisdiction over foreign defendants.

3. In an earlier case where this Court had occasion to consider the Ohio statute, Seilon, Inc. v. Brema S.P.A., 271 F.Supp.

516 (N.D.Ohio 1967), the relationship between the two state acts, and between the Illinois act and the International Shoe case is discussed at page 518 of the opinion.

4. See, for example, Travelers Health Association v. Commonwealth of Virginia, 339 U.S. 643, 70 S.Ct. 927, 94 L.Ed. 1154 (1950) ; Perkins v. Benguet Consolidated Mining Co., 342 U.S. 437, 72 S.Ct. 413, 96 L.Ed. 485, reh. den. 343 U.S. 917, 72 S.Ct. 645, 96 L.Ed. 1332 (1952).

tial in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." Hanson v. Denckla, supra, 357 U.S. at page 253, 78 S.Ct. at page 1240. Thus it would appear that unilateral acts by the plaintiff in the forum state are not sufficient contacts with the non-resident, but that the initiation of some activity by the foreign party must be present to constitute minimum contacts.[5] Some federal and state courts have attempted to set forth standards for determining the sufficiency of the non-resident's contacts under the various United States Supreme Court rulings, the Eighth Circuit finding three primary factors present in those cases: the quantity of the contacts, the nature and quality of the contacts, and the source and connection of the cause of action with those contacts. Aftanase v. Economy Baler Co., 343 F.2d 187, 197 (8th Cir. 1965).[6]

■ Of course, even though a body of case law has developed which extensively examines the meaning of the pertinent federal decisions based upon the broad confines of the due process clause, to the extent that state long-arm statutes are interpreted by the state courts to give a more limited construction than the United States Constitution requires, this Court is bound to follow the law of the state in which it sits.[7] This Court has been unable to find any decisions of the Ohio courts which construe the Ohio

long-arm statute as more restrictive than *International Shoe*, supra, and *McGee*, supra. The Ohio statute would at least appear to be more narrowly drawn than the law in Illinois, however, for the Illinois high court held that the minimal contacts test was satisfied if the defendant placed a faulty product in commerce where it could be reasonably expected that it might find its way into the plaintiff's state. Gray v. American Radiator, ·22 Ill.2d 432, 176 N.E.2d 761 (1961). The Illinois court in that case also held that the situs of the tort was in Illinois, even though the faulty product was manufactured in Ohio and sold to a Pennsylvania dealer who in turn sold it to the Illinois plaintiff. The requirements set forth in subsection (A) (4) of Section 2307.382 of the Ohio Revised Code, requiring a persistent course of conduct in the state or the receipt of substantial revenue by the non-resident, appear to clearly distinguish the minimal contacts requirements in certain tort cases from the *Gray* holding, supra.[8] The second half of the Gray decision—that the tort occurred in Illinois even though the faulty product was negligently manufactured outside of the state—is not so clearly supplanted by the 1965 Ohio act, however, and Schneider v. Laffoon, 4 Ohio St.2d 89, 212 N.E.2d 801 (1965) is a recent reiteration of the principle that where Ohio adopts statutory provisions similar to those of another state, that state's construction will be given great weight. Therefore, it might be argued that the tort in the instant case

5. In Bowman v. Curt G. Joa, Inc., 361 F.2d 706 (4th Cir. 1966), the Fourth Circuit interpreted the Hanson decision to require that the foreign defendant must have "voluntarily associated" with the forum state. 361 F.2d 713, footnote 14.

6. For other state and federal attempts to articulate precise standards see: L. D. Reeder Contractors of Arizona v. Higgins, 265 F.2d 768 (9th Cir. 1959); Byham v. National Cibo House Corp., 265 N.C. 50, 143 S.E.2d 225 (1965).

7. See, for example, Mechanical Contractors Ass'n of America, Inc. v. Mechanical

Contractors Ass'n of N. Calif., Inc., 342 F.2d 393, 398 (9th Cir. 1965).

8. Some commentators have stated that the Ohio legislature, aware of the broadness of the Gray case, purposely inserted the language of subsection (A) (4) to clarify the test in Ohio. See, e. g., Jurisdiction under the Ohio "Long-Arm" Statute— Problems of Interpretation and Application, 35 U.Cinc.L.Rev. 157, 164 (1966). Also see Commissioner's note, Uniform Interstate and International Procedure Act, § 103, 9B Uniform Laws Annotated 85–86 (Supp.1965).

was a continuing one which occurred in this state as well as Belgium, and since the case is thus within Section 2307.382 (A) (3), no showing of additional contacts need be made. However, neither the *Gray* decision in Illinois, nor the decisions in New York which have held the tort of negligent manufacture to continue into the plaintiff's state,[9] have been based upon a statute which divides the tort into two sections, as does the Ohio statute in subsections (A) (3) and (4), and a reading of the statute in its entirety leads this Court to the conclusion that the legislature created (A) (4) for the situation presented here. By distinguishing between the tortious injury and the act or omission in both (3) and (4), and then between acts or omissions "in this state" and "outside this state" through the enactment of two separate subsections, the legislature undoubtedly intended to require the additional contacts set forth in (4) if all of the defendant's causational activities took place without the state.[10]

Although the parties to the instant litigation address the problem as turning on subsection (A) (4), there are other applicable subsections in Section 2307.382, set forth in its entirety above, upon which personal jurisdiction might be grounded. With regard to subsection (1), only requiring the transaction of business within the state, counsel for the plaintiff conceded on the first page of his brief of June 26, 1968, that the defendant does not come within that subsection, seemingly abandoning that line of argument. It is appropriate at this time to note that the defendant's answers to the plaintiff's interrogatories, filed on September 16th of 1968, disclose that: (1) the defendant manufactured the Silver Eagle Bus involved in the plaintiff's alleged injuries; (2) that bus was manufactured and shipped in

January of 1966; (3) the defendant manufactured 215 Silver Eagle busses in that year, as well as 185 in 1963, 250 in 1964, 160 in 1965, and 354 in 1967; (4) that 13 Silver Eagle busses out of the 215 manufactured and sold in 1966 were purchased by customers in the continental United States, 11 of these being sold to American Bus Lines, Inc., Los Angeles, California, and two being sold to Lakeshore Coach Company, Columbus, Ohio; (5) that the two owned by Lakeshore in Columbus, and at least one of the 11 purchased by American, (which, although the defendant's answer is somewhat unclear on this point, is the same one that was being operated by Continental Trailways when the plaintiff was allegedly injured) were being operated through the State of Ohio; and (6) that the purchase price for the bus which the plaintiff was driving was $46,000.00, and that the bus had at least some specifications included in that price which may have deviated from the equipment supplied on the standard model. Since the plaintiff is not arguing that the foregoing puts him within (A) (1) of Section 2307.382, but rather (A) (4), this Court will not address itself to the problem of whether the defendant is "transacting business" within the meaning of (A) (1).

In addition to considering the jurisdictional problem under Section 2307.382(A) (4) of the Ohio Revised Code, this Court feels obligated to simultaneously consider the possible application of subsection (A) (5), which is substantially the same as (A) (4) except that in addition, the injury in Ohio must be caused by a breach of warranty outside the state, express or implied, where the non-resident seller " * * * might reasonably have expected such person to use, consume, or be affected by the goods in this state * * * ". While the plain-

---

9. The New York cases are difficult to reconcile on this point; a partial listing of them may be found in an annotation in 19 A.L.R.3d 13, 66–73 (1968).

10. In the only other decision dealing with this distinction under the Ohio long-arm statute which this Court was able to find, Busch v. Service Plastics, Inc., 261 F. Supp. 136 (N.D.Ohio 1966), Judge William K. Thomas reached a similar conclusion on the face of the statute at pages 140 and 141 of his opinion.

tiff's complaint sounds primarily in tort for negligent manufacture of the luggage compartment door on the bus, it has become increasingly difficult and even futile to distinguish between tort and contract allegations in products liability cases. For although plaintiff does not allege privity between himself as driver, and the defendant as manufacturer and seller of the bus, under Ohio law "* * * the plaintiff in a products liability case is not restricted to prosecuting his action on the basis of negligence alone but may proceed in an action in tort based upon the theory of an implied warranty, notwithstanding that there is no contractual relationship between the plaintiff and the defendant." Lonzrick v. Republic Steel, 6 Ohio St.2d 227, 236, 218 N.E.2d 185, 190 (1966).[11] Therefore plaintiff has stated facts in his complaint which arguably place him within both Section 2307.382(A) (4), and (A) (5), and the Court must now determine upon the basis of the facts in the case at this posture, whether the defendant's sales are sufficient contacts under the Ohio long-arm statute to render him subject to personal jurisdiction in the courts of Ohio.

Section 2307.382(A) (4) gives this Court jurisdiction over the person of the defendant on the facts alleged in the plaintiff's petition if:

"* * * he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this state;"

It is impossible to ascertain from the pleadings and answers to interrogatories whether the defendant corporation regularly does or solicits business in Ohio, or whether it engages in any persistent course of conduct in this state. While there appears to be a conflict in the cases as to which party has the burden of

proof to *establish* the contacts which the various statutes require, this Court is satisfied that the burden in the instant controversy is upon the plaintiff. If the defendant's motion to dismiss for lack of jurisdiction over its person did not automatically shift the burden over to the plaintiff, then the affidavit of the corporation's auditor stating that the defendant does not transact or solicit business in Ohio, nor engage in conduct in Ohio from which it derives substantial revenue, was sufficient to do so. Therefore, since the plaintiff's interrogatories only request information with respect to defendant's activities in Ohio for the year 1966, and quite naturally that is the limit of defendant's answers in this area, the plaintiff has not met its burden by showing a *regular* or *persistent* course of conduct and transaction of business by the defendant in Ohio, for the file contains no facts regarding the defendant's business contacts with Ohio for 1964, 1965, 1967, or 1968. Insofar as these elements are also necessary to sustain jurisdiction under subsection (A) (5), the plaintiff has failed in his proof under that part of the long-arm statute as well.

The question then becomes, with regard to both subsections, whether the defendant corporation derives "substantial revenue" from goods used or consumed or services rendered in this state. Unfortunately, this Court is faced with the same problem which confronted it in an earlier case construing the long-arm statute:[12] few courts in Ohio have had occasion to pass upon the section in question. Most of the reported cases construing the various provisions of this recent statute have either been facing the problem of whether the statute is retroactive as to causes of action accruing before the effective date of September 28, 1965,[13] or have dealt with the problem, usually in contract cases, of

---

11. In addition to decisional law, Section 1302.27 of the Ohio Revised Code creates an implied warranty of merchantability for goods sold in Ohio, unless such warranty is expressly excluded.

12. Seilon v. Brema, 271 F.Supp. 516, 518 (N.D.Ohio 1967).

13. See, for example, Bagsarian v. Parker Metal Co., 282 F.Supp. 766 (N.D.Ohio

whether the defendant is "transacting business" under subsection (A) (1).[14] The only case involving an interpretation of the "substantial revenue" portion of (A) (4) and (A) (5) which this Court was able to find was the decision by United States District Court Judge William K. Thomas in Busch v. Service Plastics, Inc., 261 F.Supp. 136 (N.D. Ohio 1966), mentioned above for its holding in another area. In that case the foreign defendant was an Illinois manufacturer of plastic milk bottle handles, and plaintiff was an Ohio resident who was injured when one of defendant's handles which was on a gallon bottle of milk disintegrated in her hand, causing the bottle to drop and shatter. Answers of the defendant to plaintiff's interrogatories revealed that the Illinois corporation solicited no business in Ohio; that it had no representatives or agents in Ohio; and that it had no telephone listing anywhere in Ohio. However, it was established that the defendant corporation sold from five to ten million plastic jug handles each year during a five year period to a Cleveland concern, and that the dollar volume of the sales ranged from $130,000.00 in 1961 to $200,486.00 in 1965. Upon these facts, Judge Thomas made a finding that the defendant derived "substantial revenue" within the meaning of 2307.382(A) (4) and (5) during each of the five years. The Court then proceeded to find that there were sufficient "minimum contacts" under the tests laid down in the pertinent federal decisions, discussed above in this opinion, noting in addition to the sales the numerous phone calls between the defendant and its Cleveland buyer, and the notices of shipment between the two. Finally, the court in the Busch case considered the balance of conveniences with regard to the location of potential forums for resolving the dispute, and decided that an Ohio forum could better hear the case than an Illinois one, since the accident and injuries occurred in Cleveland, Ohio.

██ This Court adheres to the view that whether or not a defendant corporation is deriving "substantial revenue" from sales or other activities in Ohio is a relative determination, depending to a great extent upon the facts of each particular case, and is therefore in agreement with the court in *Busch* where it stated:

> "varying with each nonresident business the words 'substantial revenue' would not involve nor intend any fixed minimum." Busch v. Service Plastics, Inc., supra, at page 142.

In the instant case it is determined and found that the defendant corporation "derives substantial revenue from goods used * * * in this state" within the meaning of Section 2307.382(A) (4) and (5) of the Ohio Revised Code, and that this Court may thereby exercise personal jurisdiction over the defendant in this action. Although there is nothing on file to indicate either way, the Court assumes that the defendant does not have offices here, is not licensed to do business here, and does not send manufacturer's representatives into the state to solicit business. Instead, jurisdiction is grounded upon the defendant's sales of motor busses to bus lines which use them within this state. In the year of the alleged accident alone, defendant sold 13 busses within the continental United States, out of a total sales figure for that year of 215. Of the 11 sold to American Buslines, Inc., in Los Angeles, California, apparently at least one was being operated within the State of Ohio by the plaintiff as driver for Continental Trailways, Inc., on a route from Fort Wayne, Indiana, to Detroit, Michigan, which went through northwestern Ohio and stopped at Swanton, Ohio. This bus was

---

1968) (resolving the conflict between two other federal district court decisions, and between some common pleas decisions in the state, in favor of the statute being declared remedial in nature.)

14. See, e. g., Am. Compressed Steel Corp. v. Pettibone Mulliken Corp., 271 F.Supp. 864 (S.D.Ohio 1967).

sold at a purchase price of $46,000.00, and that figure is undeniably substantial revenue from goods used in this state, when the relatively small number of total busses produced, and the large unit price are taken into consideration. Although a finding of substantial revenue and minimal contacts based solely upon the sale of the bus involved in the plaintiff's injuries and its relationship to the defendant's total sales would present much more of a borderline case, a number of cases have sustained jurisdiction on the basis of a single transaction with a state. See, for example, McGee v. Int'l Life Ins. Co., 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957); Nat'l Gas Appliance Corp. v. AB Electrolux, 270 F.2d 472 (7th Cir. 1959); and Storey v. United Insurance Co., 64 F. Supp. 896 (E.D.S.C.1946). And certainly the sale of a passenger bus, even if there be only one sale, is not a unilateral act of the plaintiff in the forum state under Hanson v. Denckla, 357 U.S. 235, 253, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958).

■ However, this Court also grounds its findings of substantial revenue to the defendant from goods used in this state and minimal contacts between the defendant and this state upon the sale of two motor busses to a Columbus, Ohio bus line, Lakeshore Coach Company. Clearly, this sale in 1966 from which the defendant corporation derived approximately $90,000.00[15] constitutes "substantial revenue from goods used in this state" within the meaning of subsections (A) (4) and (5), and certainly the two Lakeshore busses, as well as the third bus which plaintiff was

operating at the time he sustained his injuries, are "goods used in this state." These three busses sold by the defendant and used in and through the State of Ohio accounted for almost one-fourth of defendant's total sales of thirteen busses in the continental United States in 1966. Finally, with regard to the potential breach of warranty claim under subsection (A) (5) of Section 2307.382, this Court finds that the defendant corporation "might reasonably have expected" the plaintiff bus driver "to use, consume, or be affected by the goods in this state." Notwithstanding the fact that the bus which was involved in plaintiff's injuries was not one of the two vehicles sold to the Ohio bus line company, this Court cannot escape the conclusion that the seller of a passenger bus designed primarily for over-the-road interstate travel.[16] Where the purchaser is a bus line operating within the continental United States, must reasonably expect his product to be used in the State of Ohio.

In reaching this conclusion, this Court is not unaware of the decision of Velandra v. Regie Nationale Des Usines Renault, 336 F.2d 292 (6th Cir. 1964), wherein the Court of Appeals held that there was no jurisdiction over the defending French manufacturer of an automobile which allegedly caused the plaintiffs' injuries, nor over its wholly owned subsidiary which was the importer of the automobiles in New York, and which had a regional distributor in Illinois that delivered the cars to dealers in Michigan. The Michigan plaintiffs had argued that the district court had jurisdiction by reason of the corporate struc-

---

15. There is no information in the record with regard to the specifications provided on these two busses over and above the standard model's regular equipment, but the $46,000.00 price for the Continental Trailways bus did not seem to include a great deal of optional features, and the specification sheet attached to the defendant's answers to interrogatories indicates that the Silver Eagle model includes a large number of features as standard equipment.

16. Defendant's answers to interrogatories, and the attached specification sheet on the Silver Eagle bus, indicate that the model is designed to carry 46 passengers, is furnished with air conditioning and a lavatory, and that Continental required their busses to comply with all state and federal requirements regarding weight, length, width, and safety.

ture,[17] and by reason of the economic activities of the Illinois distributor in Michigan.[18] Although in many respects the *Velandra* case appears similar to the case at bar, the finding of jurisdiction in the instant case is nonetheless consistent with the framework of that appellate decision. First, as this Court said in Seilon v. Brema,[19] " * * * the real basis of that decision was that the mere ownership of stock in a corporation which does business in Michigan is not enough to subject the parent corporation to the jurisdiction of the Court." 271 F.Supp. at 520. Then secondly, the *Velandra* decision was based on Michigan law rather than Ohio law, and although the Court of Appeals at page 295 of the opinion stated that the Michigan standard for the exercise of *in personam* jurisdiction over foreign corporations was the standard of *International Shoe*, supra, evidenced by the holding in Jen-

nings v. WSM, Inc., 369 Mich. 210, 119 N.W.2d 598 (1963), a careful reading of *Jennings* leads this Court to the conclusion that the Ohio long-arm statute expands jurisdiction beyond the Michigan test utilized in that case.[20] Thirdly, the factual situation in the instant case differs in some material respects from that presented in *Velandra* and thus compels a different result, even if that case would have come out the same under the Ohio statute. Although both cases involve the sale of vehicles by a foreign manufacturer, this Court views the sale of a commercial passenger bus into Ohio as markedly different from the sale of a small automobile. In the former situation, it is expected and should be foreseeable that Ohio citizens will utilize the services of the bus lines using defendant's product, and will do so on a commercial, fare-paying basis, and that the potential number of Ohioans who could

17. Regie owned 100% of the New York importer's stock, and the New York importer in turn owned 100% of the Illinois dealer's stock. 336 F.2d at 296.

18. The record before the Court indicated that the Illinois distributor granted franchises to Michigan dealers, as well as supplying the cars; that there were three dealers in Detroit and evidence of gross sales of "upward" of $100,000.00; and that when a dealer made a sale, an express written warranty in Regie's name was given the purchaser. 336 F.2d at 296.

19. 271 F.Supp. 516 (N.D.Ohio 1967).

20. The *Velandra* decision was authored by District Judge Wilson, and he states in footnote 2 at page 294 of 336 F.2d that no citation to the Michigan statute had been made, but that the standard was set forth in Jennings, supra, and that there the Michigan Supreme Court confirmed its adherence to International Shoe. Although the Michigan high court did state that the "application or inapplication to the facts" of this doctrine governed the question of personal jurisdiction (119 N.W.2d at 599), they also stated that this was "echoed" in their own cases of Nat'l Concessions, Inc. v. Nat'l Circus Corporation, 347 Mich. 335, 79 N.W.2d 910 (1956) and Campbell Construction Co. v. Palombit, 347 Mich. 340, 79 N.W.2d 915 (1956). A reading

of these two earlier Michigan decisions discloses that the test then was whether the defendant was "doing business" in the state, and that standard is at most only as broad as the first subsection of the Ohio long-arm statute. [2307.382(A) (1)] While the Jennings Court makes reference in footnote two of its opinion to some revised Michigan law which might expand the bases of jurisdiction, now Mich.Stat.Ann. §§ 27A.711, 27A.715 [Comp.Laws 1948, §§ 600.711, 600.715, P.A.1961, No. 236], and this "long-arm" revision was held applicable in Chovan v. E. & DuPont Co., 217 F.Supp. 808 (E.D.Mich.1963) to causes of action arising before its effective date of January 1, 1963, (as the complaint in Jennings did) the Jennings Court did not rely upon the new law for its holding, but instead cited the old cases. As stated in another district court decision construing the new Michigan statute: "Under the Revised Judicature Act, the test in Michigan is no longer whether the foreign corporation is doing business so as to be present in the State, but rather whether it is carrying on a continuous and systematic *part* of its general business in the State." Donley v. Whirlpool Corp., 234 F.Supp. 869 (E.D.Mich. 1964). Therefore, this Court concludes that the Ohio long-arm statute is broader than the Michigan version of International Shoe which was espoused in Jennings v. WSM, Inc., and applied in Velandra.

be affected adversely by defective performance in a passenger bus is much greater than is the case with a small car. Also, the purchase price of one bus is approximately twenty-three times that of a Renault automobile, and the percentage of Ohio bus sales to total sales in the continental United States, at least in the year of the accident complained of, is undoubtedly greater than the percentage of Renault sales in the nation's "car center" out of the total U. S. sales of the French vehicle. In addition, on pages 297–298 of 336 F.2d, the *Velandra* Court sets forth a number of factors which are relevant in "determining whether minimum contacts exist on the basis of the presence or sale of a product within a state": the number and value of sales within the state; their ratio to the total market for similar products sold within the state; the quantity or value of defendant's production; the percentage of the total output sold within the state; and the nature of the product, particularly with reference to whether it is dangerous or not. This Court is of the opinion that the Belgian defendant in the case at hand has sufficient minimum contacts under the first, second, third and fifth of these tests. Finally, the forum alternatives in the instant case point to the allowance of the suit in Ohio, whereas the plaintiffs in *Velandra* were not so limited. In Aftanase v. Economy Baler Company, 343 F. 2d 187 (8th Cir. 1965), the Court of Appeals for the Eighth Circuit, after setting forth the three standards discussed earlier in this opinion, stated that two other factors were also mentioned in the pertinent United States Supreme Court decisions: "interest of the forum state and convenience." 343 F.2d at 197.

The plaintiff bus driver in the instant case, if not allowed to prosecute his suit in Ohio, would probably be relegated to a suit in Belgium, which, for all practical purposes would be no recourse at all. In the *Velandra* case, however, the plaintiffs could very likely be successful in obtaining jurisdiction over the French defendant or its subsidiaries in the nearby State of Illinois, where the regional distributor was incorporated, or at least in New York, where the importer was incorporated.[21] And with respect to interest of the forum state, the State of Ohio certainly has a great interest in affording the judicial machinery whereby passengers and operators of commercial busses may be redressed for injuries resulting from defects in busses sold into, and used within, its boundaries. This interest is evidenced by the fact that most states require franchises and regulation of bus lines which operate over their highways.

In conclusion, then, this Court is satisfied that the minimal contacts required by the trilogy of International Shoe Co. v. State of Washington,[22] McGee v. International Life Ins. Co.,[23] and Hanson v. Denckla,[24] and their progeny,[25] as well as the necessary elements under Section 2307.382(A) (4) and (5) of the Ohio Revised Code exist in this case. Therefore, plaintiff's service of process upon the Secretary of State in compliance with the provisions of Section 2307.383 of the Ohio Revised Code was proper, since jurisdiction over the defendant's person was obtained under § 2307.382, and defendant's motions to dismiss and to quash service will be overruled. An order will be entered in accordance with this opinion.

---

21. The Illiniois and New York long-arm statutes, as indicated earlier, are quite similar to Ohio's with respect to expanding jurisdiction to its fartherst limits under the due process clause. Partial reproductions of the two statutes and a listing of cases arising under them may be found in 19 A.L.R.3d 13, 64, 66 (1968).

22. 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945).

23. 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957).

24. 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958).

25. See, e. g., Travelers Health Assoc. v. Commonwealth of Virginia, 339 U.S. 643, 70 S.Ct. 927, 94 L.Ed. 1154 (1950); Perkins v. Benguet Consol. Mining Co., 342 U.S. 437, 72 S.Ct. 413, 96 L.Ed. 485 (1952).