### AMERICAN MARINE & MACHINERY COMPANY

v.

### The CONSUMERS' GAS COMPANY.

### Civ. A. No. 6780.

United States District Court,
M. D. Tennessee,
Nashville Division.

Sept. 19, 1973.

---

See also, 6 Cir., 495 F.2d 1373.

Thomas E. Watts, Jr., Nashville, Tenn., for plaintiff.

Charles C. Trabue, Jr., Nashville, Tenn., Ernest Williams, III, Memphis, Tenn., for defendant.

## MEMORANDUM

MORTON, District Judge.

This is a declaratory judgment action between a Tennessee plaintiff, American Marine & Machinery Company, Inc., of Nashville, Tennessee, and a Canadian defendant, The Consumers' Gas Company, of Toronto, Ontario, which involves certain rights and obligations of the parties under a demise charter agreement. The jurisdiction of this court is invoked pursuant to 28 U.S.C. § 2201 and 28 U.S.C. § 1332, there being diversity of citizenship and an amount in controversy exceeding $10,000, exclusive of interest and costs.

The material facts giving rise to this litigation are as follows. Under the demise charter between plaintiff and defendant, executed on May 22, 1968, the oil screw "Mr. Neil" was chartered by defendant for the period December 1, 1968, to December 1, 1971. The demise charter called for defendant to pay plaintiff a specified monthly sum, and also conferred an option exercisable by plaintiff to sell and an option exercisable by defendant to purchase the vessel for the sum of $1,400,000 at the expiration of the charter period.

On or about May 22, 1968, plaintiff borrowed $2,300,000 from the Chase Manhattan Bank in New York City, and executed a first preferred mortgage hypothecating the vessel to the bank. As a part of this transaction, plaintiff assigned all of its rights under the demise charter to the bank as security. Defendant consented to the assignment, and executed a Consent and Agreement, which document was attached to the assignment. Thereafter, the vessel was delivered to defendant in Canada, and was placed into operation.

At the end of the charter period, defendant notified plaintiff and Chase Manhattan Bank of its intention to exercise the option to purchase, and on December 1, 1971, the purchase was completed in New York. Prior to this date, however, defendant had been notified by the Canadian Government that the monthly installments paid under the terms of the demise charter constituted "rent" under a section of the Income Tax Act of Canada which required persons paying rent to non-residents of Canada to deduct from each rental payment a withholding tax of 15 per cent, and to remit such tax to the Receiver General of Canada. Defendant had not withheld these amounts during the charter period, but paid the assessment, together with accrued interest prior to the completion of the sale of the vessel, and notified plaintiff and the Chase Manhattan Bank of its intention to withhold the tax payment of approximately $168,000 from the purchase price of $1,400,000. The sale was completed with the tax deduction withheld, but without prejudice to all legal, equitable and contractual rights, claims and remedies, if any, which the Chase Manhattan Bank and plaintiff might have against defendant. Plaintiff asserts that defendant is liable under the demise charter for the tax assessment, and defendant denies this responsibility.

■■ The initial issue in this case is whether defendant, which was served with process under the Tennessee long-arm statute, T.C.A. § 20–235,* is subject

---

* T.C.A. § 20–235 (1971 Supp.), Tenn.Pub. Acts of 1965, ch. 67, § 1:

*Jurisdiction of persons unavailable to personal service in state—Classes of actions to which applicable.*—Persons who are nonresidents of Tennessee and residents of Tennessee who are outside the state and cannot be personally served with process within the state are subject to the jurisdiction of the courts of this state as

to the jurisdiction of this court. In this diversity action, this issue is to be resolved by reference to the law of the forum. Velandra v. Regie Nationale des Usines Renault, 336 F.2d 292 (6th Cir. 1964). In applying its long-arm statute, Tennessee has construed it as asserting jurisdiction over non-resident defendants to the extent permitted by the due process clause. Darby v. Superior Supply Company, 224 Tenn. 540, 458 S.W.2d 423 (1970). In International Shoe Company v. State of Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945), the Supreme Court enunciated the constitutional requisite for jurisdiction over non-residents in the following language:

> "[D]ue process requires only that in order to subject a defendant to a judgment *in personam*, if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" King v. Hailey Chevrolet Company, 462 F.2d 63, 66 (6th Cir. 1972), quoting from International Shoe Company v. State of Washington, *supra*, at 316, 66 S.Ct. at 158.

This Circuit, in Southern Machine Company v. Mohasco Industries, 401 F. 2d 374 (6th Cir. 1968), has formulated three criteria for determining the permissible limits of jurisdictional due process under *International Shoe*:

> "First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable." King v. Hailey Chevrolet Company, *supra*, 462 F. 2d at 67, quoting from Southern Machine Company v. Mohasco Industries, Inc., *supra*.

In the instant case, "Mr. Neil" was not located in Tennessee at the time of the charter agreement, and no representative of defendant ever came to Tennessee in reference to this matter. However, officials of defendant initiated telephone calls to plaintiff's office in Nashville, Tennessee, and a tentative agreement was reached during one of these calls. After execution of the charter, correspondence was exchanged' between defendant in Canada and plaintiff in Tennessee. Furthermore, the demise charter provided that it was to be considered as "executed in the State of Tennessee and governed by the general admiralty laws of the United States of America and the laws of the State of Tennessee, where locally applicable."

It is clear to the court that the above facts surrounding this single transaction constitute the requisite "minimum contacts" between defendant and Tennessee to warrant this court's exercise of *in personam* jurisdiction over defendant. In terms of *Southern Machine*, there is no doubt but that defendant purposefully availed itself of acting within Tennessee or causing an economic consequence within the state. Second, this cause of action arises out of the demise charter resulting from defendant's activities here. Third, the $189,046.36 tax and accrued interest in controversy is certainly a substantial enough connection with Tennessee to make the exercise of jurisdiction over the defendant reasonable.

---

to any action or claim for relief arising from :
    (a) The transaction of any business within the state ;
      *    *    *    *    *
  "Person" as used herein shall include corporations and all other entities which would be subject to service of process if present in this state. Any such person shall be deemed to have submitted to the jurisdiction of this state who acts in the manner above described through an agent or personal representative.

Defendant asserts next that this case should be dismissed since the Chase Manhattan Bank, as assignee of plaintiff's interests in the demise charter, is an indispensable party to this lawsuit under Rule 19, Fed.R.Civ.P., and is not within the jurisdiction of this court. Rule 19(a) provides for the joinder of a party who is subject to service of process and whose joinder will not deprive the court of jurisdiction over the subject matter of the action if:

". . . (1) in his absence complete relief cannot be accorded among those already parties, or (2) he claims an interest relating to the subject of the action and is so situated that the disposition of the action in his absence may (i) as a practical matter impair or impede his ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of his claimed interest." Rule 19(a), Fed.R.Civ.P.

Shields v. Barrow, 58 U.S. (17 How.) 130, 15 L.Ed. 158 (1855) is frequently cited in reference to the relevant considerations in determining whether joinder is necessary, and the following excerpt from that opinion remains of value in resolving that issue in the instant case:

"2. Persons having an interest in the controversy, and who ought to be made parties, in order that the court may act on that rule which requires it to decide on, and finally determine the entire controversy, and do complete justice, by adjusting all the rights involved in it. These persons are commonly termed necessary parties; but if their interests are separable from those of the parties before the court, so that the court can proceed to a decree, and do complete and final justice, without affecting other persons not before the court, the latter are not indispensable parties. 3. Persons who not only have an interest in the controversy, but an interest of such a nature that a final decree cannot be made without either affecting that interest or leaving the controversy in such a condition that its final determination may be wholly inconsistent with equity and good conscience." Id., at 139.

■ Applying these principles to the instant case, the court cannot conclude that joinder of the Chase Manhattan Bank is required under Rule 19. First, complete declaratory relief in reference to rights and obligations under the demise charter can be decreed between plaintiff and defendant, the parties to that agreement. Secondly, although the Chase Manhattan Bank undeniably has an interest in taxes withheld from the purchase price of the vessel, that interest is completely separable from the issue of whether plaintiff or defendant is liable under the demise charter for the payment of those taxes. Furthermore, Chase Manhattan's interest will not be impeded by the outcome of this case, nor will the bank be subjected to any risk of incurring double, multiple or otherwise inconsistent obligations as a result of the decision by this court. Likewise, this case does not affect the debtor-creditor relationship between plaintiff and the Chase Manhattan Bank, or any liability of plaintiff to the bank under their loan agreement.

The principal issue in the instant case is whether defendant is obligated under the demise charter to pay the Canadian income tax assessed against defendant as a result of the monthly charter payments paid to plaintiff. Paragraph 13 of the demise charter provides the following:

"TAXES AND APPROVALS: The Charterer agrees to pay any duties or taxes levied by the Government of Canada in respect of the importation of the Vessel into Canada delivery or redelivery into or in Canada and transfer of title and all taxes, duties, customs tolls, fees, canal charges or other levies imposed by the Government of Canada or any Province thereof or any other jurisdiction in respect of the employment of the Vessel in Canada or elsewhere during the

charter period. The Charterer agrees to obtain at its own cost and expense all governmental permissions or certificates necessary or appropriate for the Charterer's use or operation of the Vessel during the charter period."

Not only does the demise charter not specifically refer to "income taxes," but the parties agree that such taxes were not contemplated by either party at the time the agreement was entered into. It remains, therefore, for the court to determine the intent of the parties by reference to the charter agreement and surrounding circumstances.

■ No evidence has been introduced to show that the language of Paragraph 13 above is customarily used in the maritime trade to include income taxes on profits or rental payments for the use of a chartered vessel. In fact, in the absence of express language, it would appear to the court to be quite unusual for charter parties to intend that the charterer of a vessel would assume the obligation of paying not only its own income taxes but also those assessed against the income received by the owner. Therefore, in this case the plaintiff has the burden of showing that the parties contracted for other than the usual practice, and that the phrase, "The Charterer agrees to pay . . . all taxes, duties, customs tolls, fees, canal charges or other levies . . . in respect of the employment of the Vessel . . ." means more than the customary taxes which arise through the importation of the vessel into Canada and its operation there.

■ The court is unable to discern from Paragraph 13 of the demise charter an intent of either party that defendant would be liable for the income tax at issue, nor has plaintiff been able to show that such liability is usually contemplated by the parties to a demise charter. In addition, the contents of a proposed agreement drafted by plaintiff after a tentative oral agreement had been reached by the parties over the telephone reflects a contrary understanding:

"The charterer will agree that it will pay all duties and taxes levied by the Government of Canada in connection with the importation of the "Mr. Neil" into Canada. The parties agree to enter into a charter party containing all usual terms and in addition such instrument will contain a purchase-sale option providing . . . ."

Although this proposal was not the final agreement, it does reflect plaintiff's understanding that the taxes to be paid by defendant were to be those which arose out of the transfer of the vessel to defendant and its importation into Canada. Further, plaintiff contemplated a demise charter containing the usual terms of such agreements, and there has been no evidence that maritime leases of this nature normally contemplate the payment by the charterer of income taxes assessed against the charter payments. In light of these findings, the court holds that under the demise charter plaintiff is the party responsible for payment of the income taxes in issue.

■ Plaintiff also contends that defendant is liable for the contested taxes under Paragraph 17(c) of the demise charter. This section provides, in essence, that defendant shall "indemnify and hold harmless the Owner against any act or omission of the Charterer [defendant] which results in any liens, claims or liabilities of whatsoever nature upon the Vessel . . . ." However, the court finds that defendant is liable under this section only for its own acts or omissions which result in claims against plaintiff, and that the section does not encompass any and all tax assessments made against plaintiff by third parties.

Since the court has found that defendant has not defaulted under the charter, it follows that defendant is not liable under Paragraph 21 for plaintiff's attorneys' fees.

This opinion constitutes the court's findings of fact and conclusions of law pursuant to Rule 52(a), Fed.R.Civ.P. An order in accordance with this opinion will be entered.